1  JOHNSON & WEAVER, LLP
   Frank J. Johnson (174882)
2  David Elliot (270381)
   110 West "A" Street, Suite 750
3  San Diego, CA 92101
   Telephone: (619) 230-0063
4  Facsimile: (619) 255-1856

5  *Attorneys for Plaintiff*

6

7

8            UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10 GERALD EASTON, Derivatively on    Case No.: SACV12 - 01716 DOC (JPRx)
   Behalf of QUESTCOR
11 PHARMACEUTICALS, INC.,            **VERIFIED SHAREHOLDER
                                     DERIVATIVE COMPLAINT**
12
                Plaintiff,
13                                   JURY TRIAL DEMANDED
        v.
14

15 DON M. BAILEY, MICHAEL H.
   MULROY, STEPHEN L. CARTT,
16 DAVID YOUNG, VIRGIL D.
   THOMPSON, MITCHELL J.
17 BLUTT, MD, NEAL C.
   BRADSHER, STEPHEN C.
18 FARRELL, LOUIS E.
   SILVERMAN, and SCOTT M.
19 WHITCUP, MD,
20
21              Defendants,
22 -and-
23
   QUESTCOR
24 PHARMACEUTICALS, INC., a
   California corporation,
25
26              Nominal Defendant.
27

28

---

Verified Shareholder Derivative Complaint

By and through his undersigned counsel, Plaintiff Gerald Easton ("Plaintiff") brings this shareholder derivative action on behalf of QUESTCOR PHARMACEUTICALS, INC., ("Questcor" or the "Company") and against certain current and former officers and directors of the Company for breaches of fiduciary duties, unjust enrichment, and aiding and abetting thereof. Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: a) review and analysis of public filings made by Questcor and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; c) review of news articles, shareholder communications, postings on Questcor's website concerning the Company's public statements; and d) review of other publicly available information concerning Questcor and the Individual Defendants (defined herein).

## INTRODUCTION

1.     Questcor is a pharmaceutical company based on, in effect, a single product. The Company's core product, H.P. Acthar Gel (Repository Corticotropin Injection) ("Acthar"), provides over 90% of the Company's revenues.

2.      Acthar is an injectable drug that has been in use since the 1950's. Over time, Acthar has received approvals by the U. S. Food and Drug Administration ("FDA") for use in the treatment of 19 different conditions including multiple sclerosis ("MS"), nephrotic syndrome (a kidney condition), and infantile spasms.

3.      Questcor acquired the rights to Acthar in 2001 for $100,000.  At the time, Acthar was used almost exclusively to treat infantile spasms.  The drug had enjoyed some popularity in the 1970's as a treatment for M.S., but had been largely abandoned for this purpose as less expensive and more powerful corticosteroids became the preferred treatment for the condition.

4.      From April 26, 2011 to September 21, 2012, (the "Relevant Period"), as discussed further below, the Individual Defendants caused the Company to embark on a massive and concerted effort to re-market Acthar for other conditions for which it had historically been approved, despite an absence of clinical verification that it was effective or cost-effective for those conditions.

5.      That marketing effort, which has now come under scrutiny by federal authorities for allegedly improper or illegal practices, worked.  Company revenues skyrocketed, and the Company's share price rose in response to both the Company's short-term financial performance and the numerous misleading public statements the Individual Defendants made, authorized, or failed to

correct, that predicted accelerating growth in deployment of its core product Acthar into additional markets and applications.

6.    What the Individual Defendants did not disclose, however, was that the Company did not have clinical evidence that Acthar was superior, or even cost-effective, when compared with other available treatments for 18 of the 19 indications for which the drug was approved.

7.    Specifically, during the Relevant Period, the Individual Defendants violated the federal securities laws by disseminating false and misleading statements to the investing public about the effectiveness of Acthar as a treatment for MS, for nephrotic syndrome, and for other conditions, and by causing the Company to do so, making it impossible for shareholders to gain a meaningful or realistic understanding of the Company's prospects for market success.  As a result of these false statements, Questcor's stock traded at artificially inflated prices during the Relevant Period, reaching a high of $57.64 per share on July 9, 2012.

8.    On September 19, 2012, Citron Research, a research entity unrelated to Questcor, disclosed that Aetna Inc. ("Aetna"), one of the nation's largest insurers, had determined that it would no longer reimburse prescriptions for Acthar for 18 of the 19 conditions for which the drug had been approved.

9.    Aetna announced in a clinical policy bulletin that the available clinical research indicated the drug is only "medically necessary" for one of its

3

19 approved conditions: West syndrome, a rare condition that causes infantile spasms. For other conditions such as MS that are treated with steroids, Aetna found that Acthar was "not medically necessary because there is no clinical evidence that the drug is more effective than steroids."

10.     On this news, Questcor's stock plummeted $24.17 per share to close at $26.35 per share on September 19, 2012, a one-day decline of 48% on high volume.

11.     Later on September 19, 2012, in response to news of the insurer's finding, the Company issued a press release stating:

> "Currently the Company does not believe that the [Aetna] bulletin represents a material change in insurance coverage for Acthar by Aetna. During 2012, Aetna has accounted for approximately 5% of the Company's shipped prescriptions for Acthar. Based on its current assessment of the Clinical Policy Bulletin, the Company does not believe that the bulletin will have a material impact on the Company's results of operations."

12.     Investors were at least partially reassured by this statement, as the stock price recovered approximately 20% in the following days.

13.     Then, on September 24, 2012, Questcor announced in a Form 8-K filed with the SEC that the U.S. Government had initiated an investigation into the Company's marketing and promotional practices.

4

14.     After this news, Questcor's stock dropped $11.05 per share to close at $19.08 per share on September 24, 2012, a one-day decline of 37% on high volume.

15.     The dramatic run-up in the Company's share price, which came to a crashing halt when the true facts were disclosed, was a result of the Individual Defendants' deliberately misleading statements and practices.  The true facts, which were known by the Individual Defendants but concealed from the investing public during the Relevant Period, were as follows:

(a) the Individual Defendants lacked clinical evidence to support the use of Acthar for any indications other than infantile spasms.

(b) the Individual Defendants had engaged in or caused the Company to engage in questionable tactics to promote the sale and use of Acthar in the treatment of MS and nephrotic syndrome.

(c) the Individual Defendants lacked a reasonable basis to make positive statements about the Company or its outlook, including statements about the effectiveness of and potential market growth for Acthar.

16.     As a result of the Individual Defendants' false public statements and improper practices, Questcor stock traded at artificially inflated levels during the Relevant Period.  However, after the above revelations seeped into the market, the Company's share price plummeted, losing 67% of its value from the period high.

17.    Plaintiff, a shareholder of Questcor, therefore brings this shareholder derivative lawsuit against the Individual Defendants for breaching their fiduciary duties to the Company by issuing false and misleading statements and by causing and failing to disclose the improper practices during the Relevant Period.

18.    The Questcor Board of Directors ("Board") has not and will not commence litigation against the Individual Defendants, let alone vigorously prosecute such claims, because they face a substantial likelihood of liability to Questcor for authorizing or failing to correct the false and misleading statements and improper practices alleged herein.  Accordingly, a pre-suit demand upon the Questcor Board is a useless and futile act.  Thus, Plaintiff rightfully brings this action to vindicate Questcor's rights against its wayward fiduciaries and hold them responsible for the damages they have caused Questcor.

## JURISDICTION AND VENUE

19.    Jurisdiction is conferred by 28 U.S.C § 1332.  There is complete diversity among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

20.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Questcor maintains its principal executive offices in this district, one or more of the Individual Defendants reside in this district, a substantial portion of the transactions and wrongs complained of herein -- including the Individual

Defendants' primary participation in the wrongful acts detailed herein – occurred in this district, and the Individual Defendants have received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

## THE PARTIES

21.   Plaintiff has been a shareholder of common stock of Questcor at all times during the wrongdoing complained of herein and continues to hold shares in the Company.  Plaintiff is a citizen of Ohio.

22.   Nominal Defendant Questcor is a California corporation with its principal offices located at 1300 North Kellogg Drive, Suite D, Anaheim Hills, California 92087.  Questcor is publically-traded on the NASDAQ exchange with trading symbol QCOR.  As of October 1, 2012, Questcor had approximately 61.11 million common shares outstanding.

23.   Defendant Don M. Bailey ("Bailey") is, and at all relevant times was, the Company's Chief Executive Officer ("CEO"), President and a director. During the Relevant Period, defendant Bailey sold 440,000 shares of his Questcor stock for proceeds of over $17.7 million.   Bailey is a citizen of California.

24.   Defendant Michael H. Mulroy ("Mulroy") is, and at all relevant times was, the Company's Chief Financial Officer ("CFO"), Senior Vice President and General Counsel.  Mulroy is a citizen of California.

7

25.     Defendant Stephen L. Cartt ("Cartt") is, and at all relevant times was, the Company's Chief Operating Officer ("COO").   During the Relevant Period, defendant Cartt sold 505,509 shares of his Questcor stock for proceeds of over $16.2 million.  Cartt is a citizen of California.

26.     Defendant David Young ("Young") is, and at all relevant times was, the Company's Chief Scientific Officer.  During the Relevant Period, defendant Young sold 175,124 shares of his Questcor stock for proceeds of nearly $7.1 million.  Young is a citizen of California.

27.     Defendant Virgil D. Thompson ("Thompson") is the Chairman of the Board, having joined the Board in January 1996.  Thompson is a member of the Audit Committee, the Compensation Committee, and the Compliance Committee.   During the Relevant Period, Thompson sold 167,500 shares for proceeds of over $ 3.4 million.  Thompson is a citizen of California.

28.     Defendant Mitchell J. Blutt, MD ("Blutt") is a Director of the Company.  Blutt has been a director since 2010.  Blutt is a member of the Audit Committee.  During the Relevant Period, Blutt sold 636,255 shares for proceeds of over $ 21.4 million.  Blutt is a citizen of New York.

29.     Defendant Neal C. Bradsher ("Bradsher") is a director of the Company.  Bradsher joined the Company's Board in March 2004. Bradsher is a citizen of New York.

Verified Shareholder Derivative Complaint

30. Defendant Stephen C. Farrell ("Farrell") is a director of the Company. Farrell joined the Company's Board in November 2007. Farrell is a member of the Audit Committee, the Compensation Committee, and the Compliance Committee. During the Relevant Period, Farrell sold 25,000 shares for proceeds of over $ 1.0 million. Farrell is a citizen of Massachusetts.

31. Defendant Louis E. Silverman ("Silverman") is a director of the Company. Silverman joined the Company's Board in December, 2009. Silverman is a member of the Compliance Committee. Silverman is a citizen of California.

32. Defendant Scott M. Whitcup ("Whitcup") is a director of the Company. Whitcup is a member of the Compliance Committee. Whitcup is a citizen of Illinois.

33. The defendants named above in ¶¶23-32 are referred to herein as the "Individual Defendants."

34. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Questcor's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, and therefore to the investment market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or

cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

*The Individual Defendants Made or Allowed False and Misleading Statements and Violated their Fiduciary Duties During the Relevant Period*

35.     On April 26, 2011, the Individual Defendants caused Questcor to issue a press release announcing its first quarter 2011 financial results. The Company reported net income of $11.2 million, or $0.17 diluted earnings per share ("EPS"), and net sales of $36.8 million for the first quarter of 2011.

36.     Defendant Bailey made several false and misleading statements in the press release which stated in part:

> "Our strategy to expand the sales force is clearly paying off," said
> Don M. Bailey, President and CEO of Questcor. "Paid MS
> prescriptions are up sharply from last quarter. March was a
> particularly strong month and this momentum has continued so far in
> April. We believe that Acthar is filling an increasingly important role
> in the treatment of exacerbations associated with MS and, looking

forward, we expect to continue to grow sales in this important therapeutic area." Mr. Bailey added, "We are also encouraged by the early positive results from our small, dedicated nephrology sales team, which initiated selling efforts at the beginning of March. The number of nephrologists who are using Acthar to treat patients with nephrotic syndrome is increasing."

37.    After the Individual Defendants caused Questcor to issue its first quarter 2011 financial results on April 26, 2011, the Individual Defendants hosted a conference call for analysts, media representatives and investors.

38.    During the call, certain of the Individual Defendants reiterated the record financial results reported in the Company's press release and defendant Mulroy discussed the Company's financial performance in depth. Defendants Bailey and Cartt further presented prepared statements at the conference call and represented as follows:

[BAILEY:] In summary, we are off to a very good start this year as we continue to execute our straightforward strategy to sell more Acthar. Our decision to expand the MS sales force is clearly paying off. Also, our nephrotic syndrome sales force is having some early success.

* * *

11

We believe this MS sales performance reflects the strong, underlying demand for Acthar. This growth in demand is being driven by the increasing productivity of our expanded sales force. We believe net sales in the MS market are now about 60% of total Acthar net sales.

* * *

[CARTT:] Our expanded promotional activities directed to neurologists generated significant growth in Acthar prescriptions for MS during the first quarter. During the quarter we shipped a record 508 paid Acthar prescriptions for the treatment of MS relapses. This was an increase of 120% over the year ago period and 44% over the previous quarter. We believe this performance is a strong signal that the sales force expansion has gained traction in the MS market at a faster rate than we expected.

* * *

Our promotional efforts are increasingly focused on two main goals. One, convincing an increasing number of prescribers about the benefits of using Acthar with their patients and two, helping doctors, nurses and others in their medical practice become more effective at identifying potential Acthar patients.

* * *

12

Verified Shareholder Derivative Complaint

In addition to increased promotion by our sales reps, Acthar sales are benefiting from our sponsored physician speaker programs. In these programs existing Acthar prescribers present to small groups of physicians their experiences using Acthar and the published efficacy and safety data for Acthar in MS relapses. When combined with followup sales calls, these programs appear to be a key driver of our sales growth. Recently we've been significantly increasing the number of speaker programs being conducted and expect to continue doing so in the future.

39.   On July 26, 2011, the Individual Defendants caused Questcor to issue a press release announcing its second quarter 2011 financial results.  The Company reported net income of $13.9 million, or $0.21 diluted EPS, and net sales of $46.0 million for the second quarter of 2011.  The release stated in part:

"Clearly, Questcor had a terrific quarter," said Don M. Bailey, President and CEO of Questcor. "Our focus on expanding the use of Acthar in the treatment of MS exacerbations drove our record second quarter financial performance. Importantly, in spite of the rapid expansion in the use of Acthar for MS exacerbations, we believe that the prescriber base can continue to grow. Accordingly, growing MS sales remains our number one priority. Also, following our early

success in nephrotic syndrome, we are immediately and substantially
expanding our nephrology selling effort."

40.    On June 14, 2012, the Individual Defendants caused the Company
to issue a press release touting the prospects for the further commercialization of
its star product Acthar.  The press release stated, in relevant part:

> Questcor Pharmaceuticals, Inc. (NASDAQ: QCOR) today announced
> key elements of the Company's initial commercialization plans for
> H.P. Acthar® Gel (repository corticotropin injection) in the treatment
> of rheumatology-related indications already included on the FDA-
> approved package insert for Acthar.
>
> Acthar is indicated for multiple FDA-approved rheumatology-related
> conditions, including its use as adjunctive therapy in psoriatic
> arthritis, rheumatoid arthritis, juvenile rheumatoid arthritis, and
> ankylosing spondylitis. Acthar is also approved by the FDA as acute
> or maintenance therapy in selected cases of systemic lupus
> erythematosus and systemic dermatomyositis (polymyositis). The
> Company believes Acthar has the potential to help patients suffering
> from these serious, difficult-to-treat disorders who do not respond
> adequately to, or experience problematic side effects from, current
> treatments.

Verified Shareholder Derivative Complaint

Questcor's initial commercial plans for Acthar in rheumatology include the following:

- Creation of a Rheumatology Sales Force with 12 experienced rheumatology reps, a national sales director and two regional sales managers;

- Commencement of a pilot rheumatology selling effort in mid-July 2012 with an initial focus on the rare and closely related neuromuscular disorders dermatomyositis (DM) and polymyositis (PM);

- Potential expansion of the Rheumatology Sales Force following evaluation of results from the pilot effort;

- Potential roll-out in late 2012 of a DM/PM selling effort by Questcor's current Neurology Sales Force to as many as 1,000 neurologists specializing in neuromuscular disease.

Furthermore, Questcor will support creation of a patient registry for Acthar in DM/PM and will actively work to help gather clinical data in systemic lupus erythematosus, rheumatoid arthritis and psoriatic arthritis.

15

Verified Shareholder Derivative Complaint

"As we have previously stated, there are significant opportunities to enter markets where Acthar has FDA approval beyond our three key markets within nephrology, multiple sclerosis and infantile spasms," said Don M. Bailey, President and Chief Executive Officer of Questcor. "We are excited about the potential for Acthar to help an increasing number of patients with serious, difficult-to-treat autoimmune and inflammatory disorders who are in need of additional treatment options. Our commercialization launch plans for Acthar Rheumatology indications replicate the model we have successfully used to help patients afflicted with MS and certain types of nephrotic syndrome."

* * *

"While DM/PM will be the initial focus of our pilot Rheumatology Sales Force, we believe that with Acthar also being FDA-approved for the treatment of SLE, RA and psoriatic arthritis, a total of five Acthar indications related to rheumatology could become commercially viable within the next 24 months," commented Steve Cartt, Chief Operating Officer of Questcor. "Each of these five FDA-approved, Acthar indications appear to have significant revenue potential due to the high unmet need evident in these therapeutic

areas. The commercialization of each of these indications has the potential to significantly add to Questcor shareholder value."

41.   In an April, 24, 2012 conference call for analysts and investors, Defendant Young, stated "… Acthar can truly be considered a pipeline within a drug.  While quite rare, there are, in effect, few other successful examples of the type of product.   Soliris and Botox come to mind, for example.   We have a significant opportunity with Acthar to expand use from our three existing markets . . .  to other markets that are part of the list of 19 approved on-label indications."

42.   These, as well as other similar statements disseminated by the Individual Defendants during the Relevant Period, were materially misleading because they failed to disclose that Questcor lacked reliable clinical evidence of Acthar's efficacy or cost-effectiveness in these additional applications.   The statements also failed to disclose that the Company's apparent success in marketing the drug hinged on its allegedly improper marketing practices.  All of this information was available to the Individual Defendants but was not disclosed to investors.

43.   Certain of the Individual Defendants have caused the Company to assert on its official website that "Questcor's Compliance Program strives to ensure that the consequences of violating the law or company policy are clearly understood and the appropriate, consistent disciplinary action is enforced.

17

Additional efforts are underway to create a Compliance Program that increases the likelihood that unlawful and unethical behavior is identified and prevented. . . . As such, our Compliance Program requires the company to evaluate each case and respond promptly to potential violations of law or company policy, take appropriate disciplinary action, assess whether the violation is in part due to gaps in our policies, practices, or internal controls, and take action to prevent future violations."

44.     Further, Questcor's website alleges regarding the Company sales and marketing practices that, "…all of our sales representatives receive extensive training on how to conduct themselves before they go out into the field to call on physicians and other healthcare providers.  Questcor has also developed rigorous internal procedures governing how we produce and utilize promotional and educational materials."

45.     Questcor's "rigorous internal procedures," if they exist at all, apparently failed to detect or even respond to the misleading public statements or the questionable marketing practices that are the subject of the announced government investigation.

## INSIDER SELLING ALLEGATIONS

46.     Individual Defendants Bailey, Blutt, Cartt, Farrell, Thompson, and Young all sold their shares in Questcor during the Relevant Period, realizing substantial proceeds from the artificially-inflated share prices during this period.

18

47.     These Individual Defendants' sales of Questcor stock were made on the basis of material, nonpublic information regarding the clinical data, efficacy, and cost-effectiveness, and the Company's marketing practices for Acthar, such that these Individual Defendants received a material benefit that other shareholders, not privy to that information, did not receive.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

### Fiduciary Duties

48.     By reason of their positions as officers, directors, and/or fiduciaries of Questcor and because of their ability to control the business and corporate affairs of Questcor, the Individual Defendants owed and owe the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Questcor in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Questcor and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

49.     Each director and officer of the Company owes to Questcor and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants

had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

### Duties of the Audit Committee

50. In addition to these fiduciary duties, the members of the Audit Committee owed specific duties to Questcor under the Audit Committee's Charter. In particular, the Audit Committee's Charter requires the Audit Committee to assist the Board with its oversight responsibilities regarding: (a) the integrity of the Company's financial statements; and (b) the Company's compliance with legal and regulatory requirements.

51. Audit Committee duties further include that:

The Committee shall review and discuss the quarterly financial statements with management and the external auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

The Committee, through its Chair, shall report regularly to, and review with, the Board any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the

20

performance and independence of the Company's external auditor, or any other matter the Committee determines is necessary or advisable to report to the Board.

Duties of the Compliance Committee

52.    The Individual Defendants who are members of Questcor's Compliance Committee owe additional fiduciary duties to the Company.

53.    According to the Company's charter, the purpose of the Compliance Committee is to assist the Board with its oversight of significant healthcare related compliance and regulatory issues.

54.    Specific duties required to be carried out by the Compliance Committee members include:

- Review and oversee the Company's Compliance Program, including but not limited to, evaluating its effectiveness and receiving updates about the activities of the Chief Compliance Officer and other compliance personnel.

- Review the status of the Company's compliance with relevant laws, regulations, and internal procedures (e.g., compliance with U.S. federal healthcare program requirements; compliance with U.S. pharmaceutical product promotional rules and regulations, including with respect to "off-label" and other product promotional activities, unapproved product uses, fair balance, product safety claims, and product superiority or efficacy

21

claims; product manufacturing quality control; clinical studies quality control; and required reporting to the Food and Drug Administration ("FDA")). The Audit Committee of the Company's Board of Directors shall continue to assist the Board with its oversight responsibilities regarding the integrity of the Company's financial statements and the Company's compliance with legal and regulatory requirements generally.

- Review and evaluate internal reports and external data to assess whether there are significant concerns regarding the Company's regulatory and/or compliance practices, including:

- Receive details and factual reports on relevant government investigations, including the conduct at issue and whether it reflects a regulatory or compliance issue at the Company.

* * *

At least annually, receive all FDA warning letters and the responses to such letters, as well as a report on the steps taken to implement the responses and an evaluation of whether the letters, as responded to by the Company, raise any healthcare related regulatory and compliance issues.

* * *

The Committee shall report at least annually to the Board of Directors on (i) the state of the Company's compliance functions, (ii) relevant compliance issues involving the Company of which the Committee has

22

been made aware, including a summary of the results of any compliance investigations conducted by the Company, (iii) any potential patterns of non-compliance identified within the Company, (iv) any significant disciplinary actions against any compliance personnel, and (v) any other issues that may reflect any systemic or widespread problems in compliance or regulatory matters exposing the Company to substantial compliance risk. In advance of such report, the Committee and the Audit Committee, either through their respective Chairs or otherwise, shall confer on any matters of mutual interest in light of their respective responsibilities.

Control, Access, and Authority

55.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Questcor, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Questcor.

56.     Because of their advisory, executive, managerial, and directorial positions with Questcor, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Questcor.

57.   At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Questcor, and was at all times acting within the course and scope of such agency.

Reasonable and Prudent Supervision

58.   To discharge their duties, the officers and directors of Questcor were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Questcor were required to, among other things:

(a)   ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)   conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)   properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(d)   remain informed as to how Questcor conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or

practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)    ensure that Questcor was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## BREACHES OF DUTIES

59.    Each of the Individual Defendants, by virtue of his or her position as a director and/or officer, owed to Questcor and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of Questcor, as well as in the use and preservation of its property and assets.   The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Questcor, the absence of good faith on their part, and a reckless disregard for their duties to Questcor and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to Questcor.

60.    The Individual Defendants breached their fiduciary duties to investors by implementing and/or approving improper marketing practices, by concealing and failing to timely disclose the risks of these marketing practices, and by issuing false and misleading public announcements regarding the Company's prospects.

61.   The Individual Defendants each further breached their duty of loyalty and good faith by allowing other of the Individual Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements that misled shareholders into believing that Questcor's success with and future prospects for Acthar were based on reliable clinical data and proper marketing practices, and by failing to correct these statements after they were made.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

62.   In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

63.   During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to mislead shareholders into believing that Questcor was successfully diversifying into new businesses while increasing revenues and market share in its traditional switching and router businesses and that its new organizational structure was operating successfully.   In furtherance of this plan, conspiracy, and course of

Verified Shareholder Derivative Complaint

conduct, the Individual Defendants collectively and individually took the actions set forth herein.

64.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; and (b) disguise and misrepresent the Company's future business prospects.

65.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently issue false and misleading statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

66.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## DAMAGES TO QUESTCOR

67.    As a result of the Individual Defendants' wrongful conduct, Questcor adopted improper marketing strategies and practices.  The Individual Defendants' further caused Questcor to disseminate false and misleading statements which concealed the truth from investors, which resulted in increased damages to Questcor.  The losses and improper statements have devastated Questcor's credibility.  Additionally, Questcor is the subject of a securities fraud class action lawsuit.  The Company will face substantial costs in connection with an investigation and the lawsuit.

68.    As a direct and proximate result of the Individual Defendants' actions as alleged above, Questcor's market capitalization has been substantially damaged.

69.    Further, as a direct and proximate result of the Individual Defendants' conduct, Questcor has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    costs incurred in investigating and defending Questcor and certain officers in a government regulatory investigation, the federal class action lawsuit, plus potentially hundreds of millions of dollars in settlement or to satisfy adverse criminal and/or civil judgments;

(b)    costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part

Verified Shareholder Derivative Complaint

on Questcor's artificially-inflated stock price and inflated revenues; and

(c)     costs incurred from the loss of the Company's customers' confidence in Questcor's services.

70.     Moreover, these actions have irreparably damaged Questcor's corporate image and goodwill.  For at least the foreseeable future, Questcor will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Questcor's ability to raise equity capital or debt on favorable terms in the future is already impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

71.     Plaintiff brings this action derivatively in the right and for the benefit of Questcor to redress injuries suffered, and to be suffered, by Questcor as a direct result of the Individual Defendants' breaches of fiduciary duty and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.   Questcor is named as a nominal defendant solely in a derivative capacity.

72.     Plaintiff will adequately and fairly represent the interests of Questcor in enforcing and prosecuting its rights.

73.     Plaintiff was a shareholder of Questcor at the time of the wrongdoing of which Plaintiff complains and has been continuously since.

Verified Shareholder Derivative Complaint

74.     Plaintiff did not make a pre-suit demand on the Board to pursue this action, because such a demand would have been a futile and wasteful act.

75.     The Board of Questcor currently consists of the following seven defendants: Thompson, Bailey, Blutt, Bradsher, Farrell, Silverman, and Whitcup. Demand is futile as to each of them for the following reasons.

76.     Demand is futile as to Defendant Thompson, because Thompson faces a substantial likelihood of liability for his individual misconduct. Thompson, as Chairman of the Board and as a member of the Audit, Compensation, and Compliance Committees, knew of the false and misleading statements regarding Acthar's efficacy and cost-effectiveness, and either knew or with reasonable diligence should have known about the improper marketing practices, and did nothing to stop those practices or establish systems to prevent them. Defendant Thompson was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true. Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Thompson faces a substantial likelihood of liability.

77.     Demand is futile as to Defendant Bailey, because Bailey faces a substantial likelihood of liability for his individual misconduct.  Bailey, as President and CEO of the Company, and as a member of the Board, made false and misleading statements and knew them to be false and misleading regarding Acthar's efficacy and cost-effectiveness, and either knew or with reasonable diligence should have known about the improper marketing practices, and either encouraged or did nothing to stop those practices or establish systems to prevent them.  Defendant Bailey was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.  Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Bailey faces a substantial likelihood of liability.

78.     Demand is futile as to Defendant Blutt, because Blutt faces a substantial likelihood of liability for his individual misconduct.  Blutt, as a Board member and member of the Audit Committee, knew of the false and misleading statements regarding Acthar's efficacy and cost-effectiveness, and either knew or with reasonable diligence should have known about the improper marketing practices, and did nothing to stop those practices or establish systems to prevent

31

Verified Shareholder Derivative Complaint

them.  Defendant Blutt was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.  Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Blutt faces a substantial likelihood of liability.

79.    Demand is futile as to Defendant Bradsher, because Bradsher faces a substantial likelihood of liability for his individual misconduct.  Bradsher knew of the false and misleading statements regarding Acthar's efficacy and cost-effectiveness, and either knew or with reasonable diligence should have known about the improper marketing practices, and did nothing to stop those practices or establish systems to prevent them.  Defendant Bradsher was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.  Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This authorization of such statements and/or failure to

correct them constitutes a breach of fiduciary duty, for which Defendant Bradsher faces a substantial likelihood of liability.

80.    Demand is futile as to Defendant Farrell, because Farrell faces a substantial likelihood of liability for his individual misconduct.  Farrell, as a member of the Audit and Compliance Committees, knew of the false and misleading statements regarding Acthar's efficacy and cost-effectiveness, and either knew or with reasonable diligence should have known about the improper marketing practices, and did nothing to stop those practices or establish systems to prevent them.  Defendant Farrell was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.  Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Farrell faces a substantial likelihood of liability.

81.    Demand is futile as to Defendant Silverman, because Silverman faces a substantial likelihood of liability for his individual misconduct. Silverman, as a member of the Compliance Committee, knew of the false and misleading statements regarding Acthar's efficacy and cost-effectiveness, and

Verified Shareholder Derivative Complaint

either knew or with reasonable diligence should have known about the improper marketing practices, and did nothing to stop those practices or establish systems to prevent them.  Defendant Silverman was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.  Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Silverman faces a substantial likelihood of liability.

82.    Demand is futile as to Defendant Whitcup, because Whitcup faces a substantial likelihood of liability for his individual misconduct.  Whitcup, as a member of the Compliance Committee, knew of the false and misleading statements regarding Acthar's efficacy and cost-effectiveness, and either knew or with reasonable diligence should have known about the improper marketing practices, and did nothing to stop those practices or establish systems to prevent them.  Defendant Whitcup was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.  Instead, he reviewed and authorized the publication of materially false and

Verified Shareholder Derivative Complaint

misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Whitcup faces a substantial likelihood of liability.

83.    Further, if not already, several of the Individual Defendants are expected to be named defendants in a federal class action in the Central District of California alleging that they and the Company violated §10(b) of the Securities Exchange Act of 1934 Act Rule 10b-5 when they disseminated or approved false statements. The Individual Defendants are therefore interested and unable to entertain a demand objectively.

84.    A true and correct copy of this complaint was delivered to Questcor prior to being filed with this Court.

### COUNT I

*Against the Individual Defendants for Breach of Fiduciary Duty*

85.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.    The Individual Defendants owed and owe Questcor fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Questcor the highest obligation of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

87.    The Individual Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

88.    The Individual Defendants each knowingly, recklessly or negligently approved the issuance of false statements that misrepresented and failed to disclose material information concerning the Company.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

89.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Questcor has sustained significant damages.   As a result of the misconduct alleged herein, these Individual Defendants are liable to the Company.

90.    Plaintiff, on behalf of Questcor, has no adequate remedy at law.

**COUNT II**

*Against the Individual Defendants for Unjust Enrichment*

91.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

92.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Questcor.

93.     The Individual Defendants were unjustly enriched as a result of the compensation they received while breaching their fiduciary duties owed to Questcor.

94.     Plaintiff, as a shareholder and representative of Questcor, seeks restitution from these Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by these Individual Defendants from their wrongful conduct and fiduciary breaches.

95.     Plaintiff, on behalf of Questcor, has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all the Individual Defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, aiding and abetting breaches of fiduciary duty, and unjust enrichment;

B.     Directing Questcor to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Questcor and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to

place before shareholders for a vote the following Corporate Governance Policies:

- a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- a provision to provide for immediate management notice and corrective action in the event that any trading or other activities expose the Company to unacceptable exposure or risk levels;

- a provision to permit the shareholders of Questcor to nominate at least two candidates for election to the Board;

- a proposal to ensure the accuracy of the qualifications of Questcor's directors, executives and other employees;

- a proposal to strengthen the Company's procedures for the receipt, retention and treatment of complaints received by the Company regarding compliance, marketing, internal controls and auditing matters;

- a provision to strengthen the Questcor's insider trading controls; and

- a provision to appropriately test and then strengthen the internal audit, compliance, governance and control functions.

C.     Awarding to Questcor restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

Verified Shareholder Derivative Complaint

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses to the extent provided by law; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully Submitted,

Dated: October 4, 2012                   JOHNSON & WEAVER, LLP

By:   _David Elliot_

DAVID ELLIOT

*Attorneys for Plaintiff*

Verified Shareholder Derivative Complaint

## VERIFICATION

I, Gerald Easton, hereby verify that I am a shareholder of Questcor Pharmaceutical, Inc. (the "Company"), and am ready, willing, and able to pursue this action in the hope of improving the Company and recovering damages for the Company caused by the defendants' conduct. I have reviewed the allegations made in this Verified Shareholder Derivative Complaint and to those allegations of which I have personal knowledge I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. Having received a copy of this Complaint, having reviewed it with my counsel, I hereby authorize its filing.

Date 10/03/12

Gerald Easton

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV12- 1716 DOC (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

JOHNSON & WEAVER, LLP
Frank J. Johnson (174882)
David Elliot (270381)
110 West "A" Street, Suite 750
San Diego, CA 92101
(619) 230-0063

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gerald Easton, Derivatively on Behalf of Questcor Pharmaceuticals, Inc., | CASE NUMBER |
| PLAINTIFF(S) | SACV12 - 01716 DOC (JPRx) |
| v. | |
| Don M. Bailey, Michael H. Mulroy, Stephen L. Cartt, David Young, Virgil D. Thompson, Mitchell J. Blutt, MD, Neal C. Bradsher, Stephen C. Farrell, Louis E. Silverman, and Scott M. Whitcup, MD, Defendants, -and- Questcor Pharmaceuticals, Inc., a California corporation, Nominal Defendant. | SUMMONS |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Frank Johnson_____, whose address is __Johnson & Weaver, LLP, 110 West "A" Street, Suite 750, San Diego, CA 92101_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  __OCT - 4 2012__

By:  _____  **LORI WAGERS**

Deputy Clerk

*(Seal of the Court)*

1225

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Gerald Easton, Derivatively on Behalf of Questcor Pharmaceuticals, Inc.

**DEFENDANTS**
Don M. Bailey, Michael H. Mulroy, Stephen L. Cartt, David Young, Virgil D. Thompson, Mitchell J. Blutt, MD, Neal C. Bradsher, Stephen C. Farrell, Louis E. Silverman, et al.

**(b)** Attorneys (Firm Name, Address and Telephone Number, If you are representing yourself, provide same.)
Johnson & Weaver, LLP, Frank Johnson, David Elliot, 110 West "A" Street, Suite 750, San Diego, CA 92101, (619) 230-0063

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** – For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No          ☑ MONEY DEMANDED IN COMPLAINT: $ Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. section 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS — PERSONAL INJURY | TORTS — PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions |  |  | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land |  |  |  | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability |  |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property |  |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:   SACV12-01716 DMG (JPRx)

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Ashtabula County, Ohio |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| See attached. | See attached. |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _David Elliot_     Date 10/4/12

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 2 of 2

**Attachment to Civil Cover Sheet**
**IX. Venue (b)**

Don M. Bailey- Orange County

Michael H. Mulroy-Orange County

Stephen L. Cartt-San Mateo County

David Young-Orange County

Virgil D. Thompson-San Diego County

Mitchell J. Blutt, MD-New York

Neal C. Bradsher-New York

Stephen C. Farrell-Massachusetts

Louis E. Silverman-Orange County

Scott M. Whitcup, MD-Illinois

Questcor Pharmaceuticals, Inc.-Orange County