1  THE WEISER LAW FIRM, P.C.
   KATHLEEN A. HERKENHOFF (SBN 168562)
2  12707 High Bluff Drive, Suite 200
   San Diego, CA 92130
3  Telephone: 858-794-1441
   Facsimile: 858-794-1450
4  Email: kah@weiserlawfirm.com

5  Attorneys for Plaintiff Bruce Johnson and
   Proposed Co-Lead Counsel

6

7                  UNITED STATES DISTRICT COURT

8                 CENTRAL DISTRICT OF CALIFORNIA

9

10 GERALD EASTON, Derivatively On        )  Case No. SACV12-01716
   Behalf of QUESTCOR                     )  (DMG)(FMOx)
11 PHARMACEUTICALS, INC.,                 )
                                          )  DECLARATION OF FRANK J.
12                         Plaintiff,     )  JOHNSON IN SUPPORT OF
                                          )  MOTION FOR CONSOLIDATION
13         vs.                            )  AND APPOINTMENT OF LEAD
                                          )  COUNSEL
14 DON M. BAILEY, MICHAEL H.              )
   MULROY, STEPHEN L. CARTT,              )  DATE:      November 30, 2012
15 DAVID YOUNG, VIRGIL D.                 )  TIME:      9:30 a.m.
   THOMPSON, MITCHELL J. BLUTT,           )  CTRM:      7
16 MD, NEAL C. BRADSHER,                  )  JUDGE:     Hon. Dolly M. Gee
   STEPHEN C. FARRELL, LOUIS E.           )
17 SILVERMAN and SCOTT M.                 )  Date Case Filed: 10/4/12
   WHITCUP, MD.,                          )
18                                        )
                           Defendants,    )
19                                        )
           – and –                        )
20                                        )
   QUESTCOR PHARMACEUTICALS,              )
21 INC., a California Corporation,        )
                                          )
22                       Nominal Party.   )
   _____   )
23
   Caption continued on following pages.
24

25

26

27

28

| | | |
|---|---|---|
| 1 | BRUCE JOHNSON, Derivatively on | ) Case No. SACV12-01718 |
| 2 | Behalf of QUESTCOR<br>PHARMACEUTICALS, INC., | ) (DMG)(FMOx) |
| 3 | Plaintiff, | ) Date Case Filed: 10/4/12 |
| 4 | vs. | ) |
| 5 | DON M. BAILEY, MICHAEL H. | ) |
| 6 | MULROY, STEPHEN L. CARTT,<br>DAVID YOUNG, VIRGIL D. | ) |
| 7 | THOMPSON, MITCHELL J. BLUTT,<br>NEAL C. BRADSHER, STEPHEN C. | ) |
| 8 | FARRELL, LOUIS E. SILVERMAN<br>and SCOTT M. WHITCUP, | ) |
| 9 | Defendants, | ) |
| 10 | – and – | ) |
| 11 | QUESTCOR PHARMACEUTICALS, | ) |
| 12 | INC., | ) |
| 13 | Nominal Party. | ) |
| 14 | | ) |
| 15 | NILABRATA GOSWAMI, Individually | ) Case No. SACV12-01753 |
| 16 | and On Behalf of All Others Similarly<br>Situated, | ) (DMG)(FMOx) |
| 17 | Plaintiff, | ) Date Case Filed: 10/11/12 |
| 18 | vs. | ) |
| 19 | DON M. BAILEY, MICHAEL H. | ) |
| 20 | MULROY, STEPHEN L. CARTT,<br>DAVID YOUNG, VIRGIL D. | ) |
| 21 | THOMPSON, MITCHELL J. BLUTT,<br>and STEPHEN C. FARRELL, | ) |
| 22 | Defendants, | ) |
| 23 | – and – | ) |
| 24 | QUESTCOR PHARMACEUTICALS, | ) |
| 25 | INC., | ) |
| 26 | Nominal Defendant. | ) |
| 27 | Caption continued on following page. | |
| 28 | | |

| | | |
|---|---|---|
| 1 | EARL RICHARDS, Individually and | ) Case No. SACV12-01754 |
| 2 | On Behalf of All Others Similarly Situated, | ) (DMG)(FMOx) |
| 3 | | ) Date Case Filed: 10/11/12 |
| | Plaintiff, | ) |
| 4 | | ) |
| | vs. | ) |
| 5 | | ) |
| | DON M. BAILEY, MICHAEL H. | ) |
| 6 | MULROY, STEPHEN L. CARTT, | ) |
| | DAVID YOUNG, VIRGIL D. | ) |
| 7 | THOMPSON, MITCHELL J. BLUTT, | ) |
| | and STEPHEN C. FARRELL, | ) |
| 8 | | ) |
| | Defendants, | ) |
| 9 | | ) |
| | – and – | ) |
| 10 | | ) |
| | QUESTCOR PHARMACEUTICALS, | ) |
| 11 | INC., | ) |
| 12 | Nominal Defendant. | ) |
| 13 | | |

| | | |
|---|---|---|
| 14 | JAMES TRIPOLI, Derivatively On | ) Case No. SACV12-01759 (AG)(MLGx) |
| 15 | Behalf of QUESTCOR PHARMACEUTICALS, | ) Date Case Filed: 10/11/12 |
| 16 | Plaintiff, | ) |
| 17 | vs. | ) |
| 18 | DON M. BAILEY, MICHAEL H. | ) |
| 19 | MULROY, STEPHEN L. CARTT, DAVID YOUNG, DAVID J. | ) |
| 20 | MEDEIROS, MITCHELL J. BLUTT, VIRGIL D. THOMPSON, STEPHEN | ) |
| 21 | C. FARRELL, NEAL C. BRADSHER, LOUIS E. SILVERMAN, and SCOTT | ) |
| 22 | M. WHITCUP, | ) |
| 23 | Defendants, | ) |
| | – and – | ) |
| 24 | | ) |
| 25 | QUESTCOR PHARMACEUTICALS, INC., a California Corporation, | ) |
| 26 | Nominal Defendant. | ) |
| 27 | | |
| 28 | | |

I, Frank J. Johnson, declare as follows:

1.     I am a partner at Johnson & Weaver, LLP ("Johnson & Weaver") and counsel for Plaintiff Gerald Easton ("Plaintiff" or "Mr. Easton").  I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

## I.     Johnson & Weaver's Diligent Efforts To Prosecute The Derivative Action

2.     My firm has already expended a significant amount of hours on the litigation of this case.  On September 19, 2012, Citron Research, a research entity unrelated to Questcor Pharmaceuticals, Inc. ("Questcor" or the "Company"), disclosed that Aetna Inc., one of the nation's largest insurers, had determined that it would no longer reimburse prescriptions for Acthar for 18 of the 19 conditions for which the drug had been approved.  Shortly thereafter, I was retained by Mr. Easton, a shareholder of Questcor, to investigate possible breaches of fiduciary duties by the Company's Board of Directors ("Board").

3.     After conducting extensive factual research – including reviewing news articles, press releases, and public filings by the Company with the Securities and Exchange Commission – I determined that making any demand on the Board would be a futile and wasteful act, because a majority of the Board faces a substantial likelihood of liability for their misconduct.  Accordingly, at my direction, my law firm drafted a well-researched and thorough shareholder derivative complaint (the "Complaint") on behalf of Mr. Easton and was the first such complaint that was filed in this district to my knowledge.

4.     Since filing this Complaint, Johnson & Weaver has been actively monitoring the dockets of all related cases and various media resources and learned that at least four other derivative complaints have been filed.

## II.     Johnson & Weaver's Attempts To Meet And Confer

5.     Shortly after filing the Complaint, I spoke with all plaintiffs' counsel who filed the various derivative complaints.  Where multiple plaintiffs file related cases,

1   courts typically prefer for these plaintiffs to agree on a leadership structure without

2   court intervention.  I share in this preference for an agreed structure and have made

3   valiant attempts to reach such an agreement.  Despite the fact that my firm has worked

4   with counsel in each of the other complaints in other cases as co-lead counsel, to my

5   surprise I was only able to reach agreement with The Weiser Law Firm, P.C. to work

6   together in a coordinated and efficient fashion.

7        6.    I also spoke with defense counsel to discuss service of the complaint and

8   consolidation with the related cases that were filed.  Specifically, I agreed with

9   defense counsel that defendants need not answer the individual complaints until Lead

10  Counsel was appointed and a consolidated complaint was filed.  We negotiated and

11  agreed upon a stipulation to that effect.  We also briefly discussed the possibility of

12  settlement.

13  **III.    Johnson & Weaver's Qualifications**

14       7.    Prior to forming Johnson & Weaver, I was a partner at Sheppard Mullin

15  Richter & Hampton LLP, a 500-lawyer firm and one of the preeminent firms in the

16  United States, where I represented publicly traded companies in defending

17  representative actions.  This prior experience carried over into my current practice

18  with Johnson & Weaver.

19       8.    Specializing in shareholder derivative litigation, Johnson & Weaver has

20  been retained not only by shareholders but also by publicly-traded corporations to

21  pursue former directors for breaches of fiduciary duties in a number of matters.  Thus,

22  Johnson & Weaver has the unique experience of both pursuing claims on a

23  contingency fee basis and an hourly basis for boards of directors.  Because of its

24  experience representing both shareholders and corporations, Johnson & Weaver stands

25  apart from other plaintiffs-side securities firms in this arena.  This experience is

26  summarized in the firm's resume, attached hereto as Exhibit A.

27       9.    For example, in *Gladstone v. Reinhard, et al.,* No. 37-2008-00091039-

28  CU-NP-CTL, my law firm was retained by the Chapter 7 trustee of Artes Medical,

Inc. in an action that was originally filed as a shareholder derivative action for breach of fiduciary duty against Artes' former officers and directors in San Diego Superior Court. After years of hard fought litigation on behalf of the estate in bankruptcy, we negotiated a multi-million dollar settlement which was approved by the bankruptcy court on September 1, 2011. In finding that "[t]here's no question in my mind that this settlement is in the best interest of this estate," the Honorable Laura S. Taylor stated that, "I want to compliment Mr. Johnson, and I want to compliment on the successful recovery for the estate. The creditors thank you, and I thank you." *See* Reporter's Transcript of Proceedings, Motion for Order Approving Settlement Pursuant to Federal Rules of Bankruptcy Procedure 9019 Filed on Behalf of Leslie T. Gladstone, September 1, 2011, p. 3:16-18, 23-25; *see* Exhibit B at 3.

10. Johnson & Weaver's predecessor firm ("Johnson Bottini") served as co-lead counsel in *In re Brocade Communications Systems, Inc. Derivative Litigation*, No. 1:05-cv-041683 (Cal. Super. Ct. – Santa Clara County), one of the highest profile cases in the country involving the backdating of stock options by the company's Chief Executive Officer and V.P. of Human Resources, both of whom were convicted of criminal securities violations by grand juries in related criminal actions pending in the Northern District of California. My firm successfully challenged an inadequate settlement of a related federal derivative action. That settlement would have released certain of the officers, directors, and agents of the company responsible for a criminal backdating scheme with no monetary recovery to the company and a $525,000 attorneys' fee. After almost three years of diligently prosecuting the case – including extensive motion practice, review of approximately three million pages of documents and the marshaling of evidence from related cases involving the conduct at Brocade – my firm was retained to serve as co-counsel to Brocade's Special Litigation Committee. After my firm made presentations, the Special Litigation Committee authorized the continued prosecution of claims against ten of Brocade's officers and directors on behalf of the shareholders. The court approved the resolution that my

firm negotiated with the Special Litigation Committee as well as the eventual resolutions with Brocade's executives. This resolution resulted in a nearly $23 million recovery for the company.

11. My law firm was retained by International Real Estate (a public company with shares listed on the London Stock Exchange) in *International Real Estate PLC v. Oaktree Capital Management, LLC, et al.,* No. BC 324973 (Cal. Super. Ct. – L.A. County), to pursue claims for breach of fiduciary duty against former directors of a joint venture company. In that case, which involved alleged damages of approximately $20 million, we were ultimately able to negotiate a settlement for my client on confidential, but favorable, terms.

12. My law firm was also retained by Greenland Corporation, a publicly traded company located in San Diego, to pursue claims for breach of fiduciary duty against several former officers and directors in *Greenland Corp. v. Bonar, et al.*, No. GIC 842605 (Cal. Super. Ct. – S.D. County). That case also settled on confidential terms, but with a significant payment to my client.

13. Courts have recognized that my law firm has the experience to handle complex derivative matters. For example, in *Green Meadows Partners, LLP v. Tompkinson*, No. SACV 06-91 (C.D. Cal.), the Honorable Cormac Carney appointed my firm as lead counsel over competing lead counsel motions, in a case where seven derivative complaints had been filed, noting that my law firm is "exceptionally qualified and experienced" and that my firm had "more actively pursued this case on behalf of the plaintiffs." The district court subsequently approved a settlement agreement that required implementation of several corporate therapeutic changes.

14. Similarly, in *Dislevy v. Sacks*, No. ED CV 08-06788 (C.D. Cal.), the Honorable Stephen G. Larson was faced with competing motions for lead counsel over two derivative cases. Judge Larson concluded that my law firm has "tremendous attributes" and appointed my law firm as lead counsel because "they have, in the

1  Court's view, more diligently pursued this particular prosecution." *See* <u>Exhibit E</u> at

2  21.

3      15.    On September 14, 2011, the Honorable Edward M. Chen appointed

4  Johnson & Weaver lead counsel in *In re Oclaro, Inc. Derivative Litigation*, Lead Case

5  No. C-11-3176 EMC (N.D. Cal.) over competing motions noting that "the Court is

6  favorably impressed with [Johnson & Weaver's] presentation and knowledge." *See*

7  <u>Exhibit D</u> at 4.

8      16.    In *In re OmniVision Technologies Derivative Shareholder Litigation*, 1-

9  12-cv-216875 (Cal. Super. Ct. – Santa Clara Cnty., filed January 17, 2012), the Hon.

10  James P. Kleinberg appointed Johnson & Weaver Lead Counsel in part because "the

11  presentations by [Johnson & Weaver] are comprehensive and convincing." *See*

12  <u>Exhibit C</u> at 3.

13      17.    Aside from its substantial experience, Johnson & Weaver has the

14  resources and personnel necessary to pursue these derivative claims.

15      I declare under penalty of perjury under the laws of the State of California that

16  the foregoing is true and correct.

17

18

19  Executed on this 26th day of October, 2012.

                          */s Frank J. Johnson*

20                            FRANK J. JOHNSON

21

22

23

24

25

26

27

28

# Exhibit A



ATTORNEYS AT LAW

## FIRM RESUME

Johnson & Weaver, LLP is committed to delivering comprehensive, creative, and cost-effective solutions to complex legal problems. The trial lawyers at Johnson & Weaver, LLP have experience and training from some of the biggest firms in the country. We pride ourselves on providing the same level of service with the efficiency and personal touch that only a small firm can offer. Whether we're representing defrauded individuals or publicly-traded corporations, Johnson & Weaver, LLP has a track record of success.

## OUR ATTORNEYS

### FRANK J. JOHNSON

Mr. Johnson is one of the founding partners of Johnson & Weaver, LLP. Prior to starting his own law firm, Mr. Johnson was a partner in the law firm Sheppard, Mullin, Richter & Hampton LLP, a full-service Am Law 100 law firm with more than 400 attorneys in nine offices located throughout the country. Mr. Johnson has represented some of the largest well-known companies in the country in complex business disputes. He has conducted both jury and non-jury trials in state and federal court.

Areas of Practice: Mr. Johnson's practice focuses on complex litigation. Mr. Johnson has extensive experience in all aspects of trial practice, mediation, trial preparation, and non-jury and jury trials in state and federal court. In addition to his general trial practice, Mr. Johnson has both prosecuted and defended a number of cases involving securities fraud in class actions and derivative cases.

Professional Qualifications and Activities: Mr. Johnson was admitted to the State Bar of California in 1994. He has an AV rating with Martindale-Hubble which indicates very high to preeminent legal ability and very high ethical standards as established by confidential opinions from members of the Bar. He is currently admitted in good standing with the following courts:

- All courts of the State of California
- The United States Court of Appeals for the Ninth Circuit
- The United States Court of Appeals for the Third Circuit
- The United States District Courts for the Southern, Central and Northern Districts of California
- The United States Court of Federal Claims

Mr. Johnson is also a member of the following professional organizations:

- The San Diego County Bar Association
- The Federal Bar Association
- The Litigation Section of the State Bar of California
- SD Regional Chamber of Commerce, Vice Chair Tech Comm. (2002-03, 2003-04, 2004-05)

Mr. Johnson completed the following trial advocacy programs:

- San Diego County District Attorney one-month misdemeanor jury trial program
- Louis M. Welsh American Inn of Court, one year program
- San Diego Inn of Court College of Advocacy, multi-week trial course
- San Diego Inn of Court College of Advocacy, multi-week evidence course

Following graduation from law school in 1994, Mr. Johnson served as a judicial law clerk for one year for the Honorable John S. Rhoades, a federal trial judge in the United States District Court for the Southern District of California.

Education and Awards: Mr. Johnson received his Juris Doctorate degree from Washington University School of Law in 1994, where he was in the top 10% of his class while in attendance.  In his first year of law school, Mr. Johnson received the American Jurisprudence Award in Contracts.  At both Washington University School of Law and the University of San Diego School of Law (where Mr. Johnson was a visiting student in his third year), Mr. Johnson won first place awards in each school's Moot Court Competition.  He received his Bachelor of Science degree in Business Administration with an emphasis in Finance from San Diego State University in 1990, where he graduated second in his class major, with honors and *summa cum laude*.

Johnson & Weaver, LLP
Firm Resume
Page 3 of 15

## BRETT M. WEAVER

Mr. Weaver is one of the founding partners of Johnson & Weaver, LLP. Before forming Johnson & Weaver, LLP, Mr. Weaver was an associate at the mid-sized San Diego firms of Johnson Bottini, LLP, Butz Dunn DeSantis & Bingham and Mazzarella Dunwoody & Caldarelli.

Areas of Practice:  In addition to complex business litigation, Mr. Weaver's practice areas include consumer class actions, securities litigation, professional-malpractice and malicious malicious-prosecution cases, employment law, and real-estate disputes.  Mr. Weaver has also handled a number of anti-SLAPP cases arising from the exercise of free speech and petitioning activities.  Mr. Weaver litigates cases in both state and federal court and has handled all aspects of litigation including mediation, arbitration, trial preparation, jury trials and appeals.

Professional Qualifications and Activities:  Mr. Weaver is admitted in good standing with the following courts:

- All courts of the State of California
- The United States District Court for the Southern, Central and Northern Districts of California
- The United States Court of Appeals for the Ninth Circuit

Mr. Weaver completed the following trial advocacy programs:

- Louis M. Welch American Inn of Court, one year program
- San Diego Inn of Court, multi-week evidence course

During law school, Mr. Weaver served as a judicial extern for Justice Judith L. Haller at the California Court of Appeal (4th District, Division 1) and Hon. J. Richard Haden (Ret.) at the San Diego Superior Court.

Education and Awards:  Mr. Weaver received his Juris Doctorate degree from the University of Arizona College of Law in 1999.  Mr. Weaver actively participated in Moot Court and was named a member of the Moot Court Board, National Moot Court Team and was named the school's Most Outstanding Oral Advocate.  Mr. Weaver graduated with honors from the University of Arizona in 1996, receiving a B.A. in Political Science.

Johnson & Weaver, LLP
Firm Resume
Page 4 of 15

## SHAWN E. FIELDS

Areas of Practice: Mr. Fields practices in securities and consumer fraud class action litigation and complex civil litigation. He has extensive experience in all aspects of trial practice and discovery, as well as mediation and trial preparation in state and federal court.

Professional Qualifications and Activities: Before joining Johnson & Weaver, LLP in August 2010, Mr. Fields was a litigation associate at the San Francisco office of Latham & Watkins, LLP. His practice focused primarily on defending corporate clients in complex civil litigation. Representative matters include:

- defending a Fortune 500 company in an antitrust SEC enforcement action;
- defending an executive in a white collar criminal action in federal court;
- defending a major corporation in a price-fixing class action in federal court; and
- defending a technology company in a patent infringement action in federal court.

Mr. Fields also managed Latham & Watkins' pro bono practice, during which time he represented numerous immigrant families seeking humanitarian relief in immigration court and regularly defended homeless criminal defendants in San Francisco Superior Court.

Mr. Fields also served for one year as the Tanzania Country Director for Asylum Access, a global refugee legal aid organization. In this role he supervised the legal representation of over 500 Congolese refugees and advanced significant legal and policy changes before the United Nations and government of Tanzania.

Mr. Fields is admitted to practice before all courts of the State of California and the United States District Courts for the Southern, Central, and Eastern Districts of California.

Education: Mr. Fields received his law degree magna cum laude from Boston University School of Law in 2007, where he served for two years on the Boston University Law Review. He received his Bachelor of Arts degree in Political Science from Yale University in 2003.

<u>Publications</u>: Constitutional Comparativism and the Eighth Amendment: How a Flawed Proportionality Requirement Can Benefit From Foreign Law, 86 B.U. L. Rev. 963 (October 2006).

The U.S. Response to Human Trafficking: An Unbalanced Approach, Women's Commission for Refugee Women and Children (May 2007) (substantive drafter; published by Latham & Watkins LLP).

Private Crimes and Public Forgiveness: Towards a Refined Restorative Justice Amnesty Regime, Intl. J. Civ. Soc. L., Vol. V, Issue II (April 2007) (online only).

Prisoner Access to the Courts and the Actual Injury Requirement: How the Standing Paradox in Lewis v. Casey Threatens the Future of Prisoners' "Most Fundamental Right" (April 2007) (presented at Northwestern University School of Law faculty workshop).

An Act Further Protecting Victims of Domestic Violence, House No. 30, Massachusetts General Assembly (2005-2006 Session); accompanied by supporting position paper The Urgent Need for Increased Law Enforcement Protection of Trafficking Victims of Domestic Violence, Signed into law as Chapter 418 of the Acts of 2006 (January 2007).

## **<u>DAVID ELLIOT</u>**

Mr. Elliot has brought and defended securities and shareholders' derivative actions, employment discrimination, products liability, consumers' rights, unfair competition, insurance bad faith and cost-recovery suits and environmental regulatory and enforcement actions. He has litigated large-scale consumer and toxic tort class actions, including the first litigation ever brought under the Multi-Party, Multi-Forum Trial Jurisdiction Act, the precursor to the Class Action Fairness Act.

Mr. Elliot has represented clients in the electronics, computer hardware and software, electrical power generation, telecommunications, food and beverage, and general manufacturing industries facing potential multi-billion dollar liabilities. Drawing on fifteen years of experience as a Fortune 50 executive and consultant prior to his legal career, he also maintains a practice in environmental regulatory compliance counseling and buy- and sell-side transactional due diligence.

Johnson & Weaver, LLP
Firm Resume
Page 6 of 15

Before joining Johnson & Weaver, LLP, Mr. Elliot was an associate with the firms of Baker & McKenzie and Skadden, Arps, Slate, Meagher & Flom LLP, listed as #1 and #2 on the 2011 AmLaw 100.

Areas of Practice: Mr. Elliot practices securities and general business litigation, consumer legal remedies and environmental law, and has represented clients in regulatory matters arising under Federal Clean Air Act, Clean Water Act, RCRA, CERCLA, TSCA, OSHA, and state-equivalent regulations.

Professional Qualifications: Mr. Elliot is admitted to practice in all the state courts of California, Illinois, and Massachusetts, in the Federal District Courts for the Southern District of California, Northern District of Illinois, District of Massachusetts, and the Seventh Circuit Court of Appeals.

Education: Mr. Elliot received his Juris Doctorate from the Chicago-Kent College of Law at the Illinois Institute of Technology. He graduated Magna cum laude, was on Law Review, Dean's List, Order of the Coif, and was awarded the Chicago-Kent Honors Scholarship. Mr. Elliot received AmJur(Cali) awards in Evidence, Contracts, Property, Products Liability, and Legal Writing. He also served as a Judicial Extern for the U.S. Federal District Court for the Northern District of Illinois.

Prior to his legal education Mr. Elliot received a Masters of Science from Harvard University and a Bachelors of Science from the University of California at Berkeley. As part of his Masters program, Mr. Elliot also attended classes at the Massachusetts Institute of Technology and Harvard's Kennedy School of Government and worked for the Harvard Program on Negotiation.

## HEIDI S. BLOOMFIELD

Areas of Practice: In addition to securities litigation, Ms. Bloomfield's practice areas include professional malpractice defense, employment law, elder law and product-liability litigation. Ms. Bloomfield has litigated cases in both state and federal court and has handled all aspects of litigation including mediation, trial preparation, jury trials and appeals.

Professional Qualifications and Activities: Ms. Bloomfield is admitted in good standing with the following courts:
- All courts of the State of California;
- The United States District Court for the Southern and Central Districts of California.

Johnson & Weaver, LLP
Firm Resume
Page 7 of 15

Ms. Bloomfield has completed the following trial advocacy programs:

- Louis M. Welch American Inn of Court, one year program;
- San Diego Inn of Court, multi-week evidence course.

Education and Awards: Ms. Bloomfield received her juris doctorate degree from the University of California, Hastings College of Law in 1999. During law school, Ms. Bloomfield served as a judicial extern for Justice Patricia Benke at the California Court of Appeal (4th District, Division 1) and the Hon. Fern M. Smith (Ret.) at the United States District Court for the Northern District of California.

# REPRESENTATIVE MATTERS

The attorneys at Johnson & Weaver, LLP, have been Lead Counsel, Co-Lead Counsel, or played a significant role in the following matters:

- *Rubin v. Reinhard, et al.,* Case No. 37-2008-00091039-CU-NP-CTL (Superior Court for the State of California, County of San Diego). Johnson & Weaver, LLP's predecessor firm was sole lead counsel in this derivative lawsuit. After the company filed a petition for relief under Chapter 7 of the Bankruptcy Code, the Bankruptcy Trustee retained Johnson & Weaver, LLP's predecessor firm as special litigation counsel to prosecute claims for breach of fiduciary duty against certain officers and directors. After several years of hard fought litigation, the Estate in Bankruptcy settled recovering $3 million.

- *International Real Estate PLC v. Oaktree Capital Management, LLC, et al.,* Case No. BC 324973 (Superior Court for the State of California, County of Los Angeles). International Real Estate (a public company with shares listed on the London Stock Exchange) retained Johnson & Weaver, LLP's predecessor firm to pursue claims for breach of fiduciary duty against former directors of a joint venture company. That case involved alleged damages of approximately $20 million and ultimately settled on favorable terms.

- *In re Brocade Communications, Systems, Inc. Derivative Litig.,* Case No. 1:05cv41683 (Superior Court for the State of California, County of Santa Clara). Johnson & Weaver, LLP's predecessor firm was Co-Lead Counsel in one of the highest-profile cases in the country challenging the award of backdated stock options by executive officers of Brocade. The case was filed in May 2005 and settled in 2010. On August 8, 2008, Johnson & Weaver, LLP's predecessor firm was retained as co-counsel to Brocade by the Special Litigation Committee of the Board of Directors of Brocade to help litigate the company's claims against ten former officers and directors of the company. An amended complaint was filed in federal court in San Francisco, and the case, *In re Brocade Communications Systems, Inc.,* Case No. 05-02233, is pending before the Honorable Charles R. Breyer in the United States District Court for the Northern District of California. After years of litigation, over $24 million was recovered for the company.

- *In re the Titan Corp. Derivative Litig.,* Case No. GIC 832018 (Superior Court for the State of California, County of San Diego). Mr. Johnson was Co-Lead Counsel in the derivative lawsuit that involved claims against

Titan's officers and directors for breach of fiduciary duty. The claims were settled after plaintiffs negotiated $29 million in increased consideration to Titan's shareholders in an all-cash merger acquisition.

- *Greenland Corp. v. Bonar, et al.*, Case No. GIC 842605 (Superior Court for the State of California, County of San Diego). Greenland Corporation, a public traded company located in San Diego, retained Johnson & Weaver, LLP's predecessor firm to pursue claims for breach of fiduciary duty against several former officers and directors. The case settled with a significant payment to Johnson Bottini's client.

- *In re Mentor Corp. Shareholder Litig.*, Case No. 1304537 (Superior Court for the State of California, County of Santa Barbara). Johnson & Weaver, LLP's predecessor firm was appointed Co-Lead Counsel (along with Coughlin, Stoia, Geller, Rudman & Robbins LLP) in this shareholder class action case which challenges the fairness of the tender offer submitted by Johnson & Johnson for all the public shares of Mentor Corp.

- *Nickell v. Shanahan et al.*, Case No. 4:07-cv-01406-SNL (United States District Court for the Eastern District of Missouri). Johnson & Weaver, LLP's predecessor firm was Lead Counsel in this shareholder derivative action challenging the backdating of stock options which occurred at Engineered Support Systems, Inc. The case is pending before Judge Limbaugh. In July 2008, two of the defendants, Michael F. Shanahan, Sr. and Gary C. Gerhardt, pled guilty in related criminal cases brought by the United States Department of Justice.

- *Green Meadows Partners, LLP v. Tompkinson (Impac Mortgage Securities Litig.)*, Case No. SACV 06-91 (United States District Court for the Central District of California), the Honorable Cormac Carney appointed Johnson & Weaver, LLP's predecessor firm Co-Lead counsel in a case where seven derivative complaints and competing motions for lead counsel had been filed. After a year and a half of litigation, Judge Carney approved the settlement agreement that required implementation of significant corporate therapeutic changes.

- *In re Dell, Inc. Derivative Litig.*, Case No. 1:06-cv-00839 (United States District Court for the Western District of Texas). By order dated March 1, 2007, the Honorable Sam Sparks appointed Johnson & Weaver, LLP's predecessor firm Co-Lead Counsel in this shareholder derivative action.

Johnson & Weaver, LLP
Firm Resume
Page 10 of 15

- *In re Sunterra Corp. Shareholder Litigation*, Case No. A525433 (Eighth Judicial District Court for the State of Nevada, County of Clark). Johnson & Weaver, LLP's predecessor firm was Co-Lead Counsel in this shareholder action challenging the fairness and disclosures made in SEC filings pertaining to a buyout offer for the company and certain actions by present and former officers and directors of Sunterra. The case was settled in 2007 when Sunterra agreed to file a supplemental filing with the United States Securities and Exchange Commission providing additional material information pertaining to the tender offer.

- *Deane v. Tombros et al.(NPS Pharmaceuticals Securities Litig.)*, Case No. 60913838 (Third Judicial District Court, Salt Lake City, Utah). Johnson & Weaver, LLP's predecessor firm was Lead Counsel in this shareholder derivative action filed against current and former officers and directors of NPS Pharmaceuticals, Inc. This matter was settled on terms that require the implementation of significant corporate therapeutic changes.

- *In re Ambac Financial Group, Inc. Derivative Litigation*, Case No. 08-CV-854 (United States District Court for the Southern District of New York). Johnson & Weaver, LLP's predecessor firm was appointed Co-Lead Counsel in this shareholder derivative action filed against current and former officers and directors of Ambac Financial Group, Inc. The matter was prosecuted vigorously until the company ultimately filed bankruptcy.

- *In re Heelys Inc. Derivative Litigation*, Case No. 07-CV-1682 (United States District Court for the Northern District of Texas). Johnson & Weaver, LLP's predecessor firm was appointed Co-Lead Counsel in this shareholder derivative action filed against current and former officers and directors of Heelys Inc. After more than a year of litigation and multiple mediations, this matter was recently settled on terms that require the implementation of significant corporate therapeutic changes.

- *In re Motorola, Inc. Derivative Litigation*, Case No. 07CH23297 (Circuit Court of Cook County, Illinois). Johnson & Weaver, LLP's predecessor firm was appointed Co-Lead Counsel in this shareholder derivative action filed against current and former officers and directors of Motorola, Inc. This matter is ongoing.

- *Baker v. Visa International Corp.*, Case No. 06cv0376 (Superior Court for the State of California, County of San Diego), Johnson & Weaver, LLP's predecessor firm was appointed Co-Lead Counsel for this nationwide consumer class action that was filed in 2006 against Visa International Corp.

for wrongfully assessing undisclosed fees on consumers by manipulating the currency conversion rates when consumers used their Visa Card for purchases in other countries. This matter removed to federal court, and transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Southern District of New York to be coordinated with the *In re Currency Conversion Fee Antitrust Litigation.* The Court approved a settlement that provided for $336 million for the class members.

Johnson & Weaver, LLP
Firm Resume
Page 12 of 15

## TESTIMONIALS

"There's no question in my mind that this settlement is in the best interest of this Estate. So I'm prepared to approve it. . . . But I want to compliment Mr. Johnson, and I want to compliment on the successful recovery for the Estate. The creditors thank you, and I thank you." *In re Artes Medical, Inc.,* (Bankr. S.D. Cal., Case No. 08-12317-LT7) (approving a $3 million settlement recovered for the estate of a bankrupt public company after the Chapter 7 Trustee retained Johnson & Weaver, LLP to pursue claims for breach of fiduciary against the directors). In approving the final award of attorneys' fees, Judge Taylor further stated: "The Court thanks Johnson & Weaver for its outstanding work on behalf of the Chapter 7 Trustee and the Estate."

> The Honorable Laura S. Taylor
> United States Bankruptcy Court Judge
> Southern District of California

Johnson & Weaver, LLP ("J&W") has "demonstrated that they are qualified and experienced and are capable of acting as lead counsel." "The Court is favorably impressed by J&W's presentation and knowledge" and "J&W's experience litigating shareholder derivative actions gives it a certain amount of pre-existing expertise." *In re Oclaro, Inc. Derivative Litig.,* (N.D. Cal., Case No. C-11-3176 EMC) (appointing Johnson & Weaver, LLP, lead counsel in a complex shareholder derivative litigation in which three separate lawsuits were filed).

> The Honorable Edward M. Chen
> United States District Court Judge
> Northern District of California

Johnson & Weaver, LLP's predecessor firm, Johnson Law Firm, is "exceptionally qualified and experienced." *Greenmeadows Partners LLP v. Tomkinson, et al.,* C.D. Cal. Case No. SACV 06-91 CJC (appointing Johnson Law Firm lead counsel in a complex shareholder derivative litigation in which six separate lawsuits were filed).

> The Honorable Cormac J. Carney
> United States District Court Judge
> Central District of California

Exhibit A, Page 18

As chairman of the board of a public company, my company was represented by Mr. Johnson and Mr. Weaver to pursue claims for breach of fiduciary duty for millions of dollars against former directors of a company formed in England. I have retained law firms throughout the world and found Johnson & Weaver's services to be superb. They were very responsive and grasped complex corporate matters involving international real estate transactions. They aggressively litigated my company's claims against several defendants who were represented by one of the largest law firms in the world. This case was very complex and complicated and involved three jurisdictions (U.S., Europe, and Sweden). They played an instrumental role in bringing the whole case to a successful settlement out of court. We ultimately reached a resolution short of trial with which I was very pleased.

> Rolf L. Nordström
> Chairman of the Board
> International Real Estate PLC

While I was the Executive Vice President and Chief Financial Officer for a publicly traded company, I consulted Frank Johnson on various legal issues. As CFO I was responsible for SEC reporting requirements and compliance with GAAP. In addition, I successfully completed the public offering of the company's stock which was a consistent top performer on the NASDAQ from 1998 to 1999. During the ten years I've known him, I've been very impressed with Mr. Johnson's integrity, business acumen, and understanding of complex securities issues. Based upon these factors, I retained Mr. Johnson and Mr. Weaver to represent me in matters where it appeared that a public company's officers or directors engaged in fraudulent conduct to the detriment of the company's shareholders (of which I was one). As a former CFO for a public company and as a shareholder, I can say with confidence that this firm has proven to be aggressive and astute in identifying claims for fraudulent conduct in connection with the sale of publicly traded securities.

> James Baker
> Chief Cost Reduction Officer
> DCI Solutions

While I was assistant general counsel for GNC Corporation, a publicly traded company at the time, I had the good fortune of working with Frank Johnson as GNC's lawyer. While he was at Sheppard Mullin, he successfully defended GNC in several matters, including a consumer class action and various business litigation matters. I have since left GNC Corporation and am now a partner at one of the largest law firms in the country. I have worked with both Mr. Johnson and

Mr. Weaver on various matters, including a jury trial in San Diego, California. Mr. Johnson proved to be an exceptional trial lawyer who assisted my firm in obtaining an outstanding verdict in our client's favor. I have recommended their services without reservation to both clients and lawyers who need highly skilled and effective representation.

> Gerald J. Stubenhofer, Esq.
> Partner
> McGuire Woods LLP

In 2004, Axeus, Inc. was using Sheppard Mullin, a large law firm, for nearly all of its legal matters. When Frank Johnson, who was then a partner at Sheppard Mullin, announced that he was departing to start his own law firm, I did not hesitate in my decision to send all of Axeus's litigation work to Mr. Johnson. At the time, Axeus was embroiled in a huge legal battle involving more than 20,000 pages of evidence and millions of dollars. Mr. Johnson and Mr. Weaver helped Axeus successfully resolve that matter and have since handled several litigation matters for Axeus, all with outstanding results. I have worked with many different law firms over the years and I can say with confidence that Mr. Johnson is one of the best lawyers I've worked with. He understands what is important to his clients: excellent legal work and value. While other firms may be less expensive, Johnson & Weaver provides value for its fees.

> Sean H. Mallean
> President & CEO
> Axeus, Inc.

Johnson Law Firm, one of the founding partners of Johnson & Weaver, LLP, was Awesome! They were professional, organized and as evidenced by juror testimonials following a one-week jury trial.... extremely effective. On claims for breach of contract and fraud, Johnson Law Firm won a 7 figure verdict for me and my company and I will forever be grateful. You never realize how important it is to have a good attorney until you need one!

> Ronald T. Fricke
> President
> Healthy Life Marketing, LLC

I am the owner of Natural Energy, which was established in 1977 and is the largest solar energy company in the western United States. Although we have an exceptional reputation, as with any large company, legal disputes are sometimes inevitable. After using a number of law firms, for the past several years Natural

Johnson & Weaver, LLP
Firm Resume
Page 15 of 15

Energy has used Johnson & Weaver, LLP, for all of its business litigation matters, from general business disputes to successfully getting a baseless class action dismissed.  Both Mr. Johnson and Mr. Weaver are aggressive, have a strong work ethic and, of utmost importance to me, have unquestionable integrity.  I have the utmost faith and confidence in Johnson & Weaver, LLP.

Ted Mount
Owner
Natural Energy

# Exhibit B

1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3          JUDGE LAURA S. TAYLOR, PRESIDING

4

5   IN THE MATTER OF:              NO. 08-12317-LT

6

7   ARTES MEDICAL, INC.

8

9   MOTION FOR ORDER APPROVING SETTLEMENT PURSUANT TO FEDERAL

10  RULES OF BANKRUPTCY PROCEDURE 9019 FILED ON BEHALF OF

11  LESLIE T. GLADSTONE

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDING

15

16          SAN DIEGO, CALIFORNIA

17          THURSDAY, SEPTEMBER 1, 2011

18

19  U.S. BANKRUPTCY COURT        BY COLLETTA BROOKS, CSR
    DEPARTMENT THREE             CSR NO. 12589
20  325 WEST F STREET            SAN DIEGO BANKRUPTCY REPORTERS
    SAN DIEGO, CA 92101          325 WEST F STREET
21                               SAN DIEGO, CA 92101
                                 (619) 741-0933
22

23

24

25

                                                        1

```
 1    APPEARANCES:

 2

 3    FOR THE TRUSTEE:

 4                      MINTZ LEVIN COHN FERRIS GLOVSKY &

 5                      POPEO

 6                      BY:  ABIGAIL O'BRIENT

 7                      3580 CARMEL MOUNTAIN ROAD

 8                      SUITE 300

 9                      SAN DIEGO, CALIFORNIA 92130

10                      (858) 314-1580

11

12

13                      JOHNSON & WEAVER LLP

14                      BY:  FRANK J. JOHNSON

15                      110 WEST A STREET, SUITE 750

16                      SAN DIEGO, CALIFORNIA 92101

17                      (619) 230-0271

18

19

20

21

22

23

24

25
```

2

1  SAN DIEGO, CALIFORNIA, THURSDAY, SEPTEMBER 1, 2011

2

3      MS. DAHL:  YOUR HONOR, MATTER NUMBER 1, *ARTES*

4  *MEDICAL, INC*. MOTION FOR ORDER APPROVING SETTLEMENT

5  PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

6  FILED ON BEHALF OF LESLIE GLADSTONE.

7      MS. O'BRIENT:  GOOD MORNING, YOUR HONOR.  ABIGAIL

8  O'BRIENT, MINTZ LEVIN, ON BEHALF OF THE TRUSTEE.

9      THE COURT:  GOOD MORNING.

10     MR. JOHNSON:  GOOD MORNING, YOUR HONOR.  FRANK

11  JOHNSON OF JOHNSON & WEAVER ON BEHALF OF THE TRUSTEE AS

12  WELL.

13     THE COURT:  ALL RIGHT.  GOOD MORNING.

14         I CAME CLOSE TO EXCUSING APPEARANCES ON THIS

15  BECAUSE IT WAS EXTREMELY WELL DONE.  IT WAS A VERY

16  COMPLETE PACKAGE.  THERE'S NO QUESTION IN MY MIND THAT

17  THIS SETTLEMENT IS IN THE BEST INTEREST OF THIS ESTATE.

18  SO I'M PREPARED TO APPROVE IT.

19         THE REASON I DIDN'T WAS, GIVEN THE MAGNITUDE OF

20  THE ISSUE, I WANTED TO MAKE SURE THAT NO ONE WAS GOING

21  TO SHOW UP AND SAY SOMETHING, NOT THAT I NECESSARILY

22  WOULD HAVE CONSIDERED IT OVER OBJECTION.

23         BUT I WANT TO COMPLIMENT MR. JOHNSON, AND I

24  WANT TO COMPLIMENT ON THE SUCCESSFUL RECOVERY FOR THE

25  ESTATE.  THE CREDITORS THANK YOU, AND I THANK YOU.

3

```
 1            AND I WANT TO COMPLIMENT THE TRUSTEE'S COUNSEL

 2    FOR THE QUALITY OF THE DOCUMENTS.   THEY WERE EXCELLENT.

 3            SO YOU MAY TAKE YOUR ORDER.

 4        MS. O'BRIENT:   THANK YOU, YOUR HONOR.

 5        MR. JOHNSON:   THANK YOU, YOUR HONOR.

 6        THE COURT:   THANK YOU.

 7                         -OOO-

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1

2   STATE OF CALIFORNIA

3   COUNTY OF SAN DIEGO

4

5   I, COLLETTA BROOKS, HEREBY CERTIFY:

6

7   THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE

8   FOREGOING CAUSE ON THE 1ST DAY OF SEPTEMBER, 2011;

9   THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING

10  UNDER MY DIRECTION AND THAT THE FOREGOING 4 PAGES CONTAIN

11  A CORRECT STATEMENT OF THE PROCEEDINGS.

12

13  DATED THIS 12TH DAY OF SEPTEMBER, 2011.

14

15

16  /S/COLLETTA BROOKS

17  COLLETTA BROOKS
    CSR NO. 12589
18

19

20

21

22

23

24

25

5

# Exhibit C

Superior Court Of California
Minute Order - CIVIL LAW AND MOTION
HONORABLE JAMES P. KLEINBERG

Calendar For: 03/02/12                                             Page:    1

Reporter: Joanne Martin        Clerk: Paula Bastian       Bailiff: Cesar Avalos

Dept: Dept 1

---

   10.   09:00AM Case: 1-12-CV-216875  D. Ecoff vs S. Hong, et al
         Type: Business Tort, Unfair Practice - UnlimitDate Filed: 01/17/12
         SubType:
         SV: 02/08/12
         Event: CV Mtn to Consolidate                   Result Code:
               Text: Motion by Plaintiff DANIEL ECOFF (112CV216875) to
               Consolidate and Appoint Lead Plaintiff and Lead Counsel
               [Atty Frank Johnson]

         PLT-0001    Daniel Ecoff
                     AGF: Omnivision Technologies, Inc.
                     Atty: Frank J. Johnson  (P)
         DEF-0002    Anson Chan
         DEF-0003    Aurelio Cisneros
         DEF-0001    Shaw Hong
         DEF-0004    Wei-Liang William Hsu
         DEF-0005    Joseph Jeng
         DEF-0006    Dwight Steffensen
         DEF-0007    Andrew Wang
         DEF-0008    Henry Yang
         NOM-0001    Omnivision Technologies, Inc.
                     Atty: Cynthia A. Dy (P) (P)

W. Scott Holleman - Wei Huang
Alan Plutzik (P) - William Barlow

( )NO APPEARANCE
( )OTHERS IN COURT AS NOTED ABOVE
( )OFF CALENDAR          ( )_____
( )NO OPPOSITION TO TENTATIVE RULING  ( )TENTATIVE RULING NOT CONTESTED
( )TENTATIVE RULING IS ADOPTED  ( )AS AMENDED  ( )SEE BELOW  ( )SEE ATTACHED

THE COURT ORDERS THIS CASE:
( )SET FOR _____ ON _____ AT _____ DEPT _____
( )CONTINUED TO _____ AT _____ DEPT _____
( )DISMISSED  ( )WITH PREJUDICE  ( )WITHOUT PREJUDICE  ( )RE: _____
( )NO SERVICE; REISSUED TO _____ AT _____ DEPT _____
( )TEMPORARY RESTRAINING ORDER TO REMAIN IN EFFECT
( )MOTION/PETITION  ( )ARGUED  ( )GRANTED  ( )DENIED  ( )OTHER_____

*(Lines 7, 9 & 10)*

**Calendar line 10**

**Case Names and Numbers:** *Ecoff v. Hong* 1-12-CV-216875, *Barlow v. Hong* 1-11-CV-213177, *Huang v. Hong* 1-11-CV-215280

Motions filed in all three cases to consolidate are unopposed and the Court independently concludes these motions are well-taken. Pursuant to CCP §1048 (a) these actions are consolidated.

The Court selects *Ecoff v. Hong,* Case No. 1-12-CV-216875 as the lead case. The firm of Johnson & Weaver, LLP is selected as Lead Counsel.

In making these decisions the Court has carefully reviewed the motions, oppositions, and responses of all parties. The arguments made by counsel in the *Barlow* and *Huang* cases regarding the appointment of lead counsel were not persuasive. In particular, appointing multiple lead counsel in this instance would not be fair, reasonable, or efficient. In contrast, the presentations by Plaintiff Ecoff and his counsel are comprehensive and convincing.

- oo0oo -

# <u>Exhibit D</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE OCLARO, INC. DERIVATIVE LITIGATION.

_____/

Lead Case No. C-11-3176 EMC

**ORDER DENYING AGUILAR'S MOTION TO CONSOLIDATE; GRANTING J&W'S MOTION FOR APPOINTMENT AS LEAD COUNSEL; AND DENYING L&K'S MOTION FOR APPOINTMENT AS LEAD COUNSEL**

**(Docket Nos. 9, 10)**

This Court is presiding over a securities fraud class action related to a company by the name of Oclaro, Inc. as well as several shareholder derivative actions based on largely the same underlying facts. Currently pending before the Court are motions in the shareholder derivation actions – more specifically, (1) a motion to consolidate and (2) two competing motions for appointment as lead counsel. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to consolidate, **GRANTS** the motion to appoint Johnson & Weaver ("J&W") lead counsel, and **DENIES** the motion to appoint Levi & Korsinsky ("L&K") and Finkelstein Thomas ("FT") lead counsel.

## I.  FACTUAL & PROCEDURAL BACKGROUND

The Oclaro securities class action was filed on May 19, 2011. *See Westley v. Oclaro, Inc.*, No. C-11-2448 EMC (Docket No. 1) (complaint). Approximately a month later, on June 27, 2011, Matteo Guindani, who is represented by J&W, filed the first shareholder derivative action. *See Guidani v. Couder*, No. C-11-3176 EMC (Docket No. 1) (complaint). Subsequently, the following shareholder derivative actions were filed: (1) on June 28, 2011, *Coney v. Couder*, No. C-11-3214

Case 8:12-cv-01716-DMG-FMO   Document 9-2   Filed 10/27/12   Page 36 of 48   Page ID
#:408
Case3:11-cv-03176-EMC   Document23   Filed09/14/11   Page2 of 6

1   EMC, in which the plaintiff is represented by the Pacific Coast Law Group; (2) on July 7, 2011,

2   *Braman v. Couillaud*, No. C-11-3322 EMC, in which the plaintiff is represented by L&K; and (3) on

3   July 26, 2011, *Aguilar v. Couillaud*, No. C-11-3668 EMC, in which the plaintiff is represented by

4   FT.

5        All of the lawsuits above have been related (including the securities class action).  In

6   addition, three of the four shareholder derivative suits have been consolidated – *i.e.*, the *Guindani*,

7   *Coney*, and *Braman* actions.  Only the *Aguilar* case has not been consolidated.  Mr. Aguilar now

8   seeks to have his case consolidated with the other shareholder derivative actions.  In addition, the

9   plaintiffs in the shareholder derivative actions have filed competing motions for appointment of lead

10   counsel.  The competing law firms are (1) J&W and (2) L&K/FT (as co-lead counsel).  Pacific Coast

11   supports J&W's motion.

## II.   DISCUSSION

13   A.   Motion to Consolidate

14        The Court addresses first Mr. Aguilar's motion to consolidate.  As a preliminary matter, the

15   Court notes that, on its face, Mr. Aguilar's complaint refers not only to a shareholder derivative

16   action but also to a "Class Action."  At the hearing, his counsel – FT – clarified that the intent was to

17   bring only a shareholder derivative suit, with one of the claims being a federal securities claim (*i.e.*,

18   §§ 10(b) and 21D of the Securities Exchange Act and Rule 10b-5).  FT also affirmed that, because of

19   the federal securities claim, the basis for subject matter jurisdiction over the complaint was federal

20   question jurisdiction.  FT disavowed any reliance on diversity jurisdiction (in contrast to the other

21   shareholder derivative suits).

22        The problem for Mr. Aguilar is that the viability of his federal securities claim is, at least at

23   this juncture, questionable.  Even assuming that a shareholder may bring, *e.g.*, a § 10(b)/Rule 10b-5

24   claim as part of a derivative action, *see Frankel v. Slotkin*, 984 F.2d 1328, 1333 (2d Cir. 1993)

25   (noting that stockholders of a company may bring a derivative action for damages to the corporation

26   suffered by reason of a violation of § 10(b) and Rule 10b-5); *Herpich v. Wallace*, 430 F.2d 792, 803

27   (5th Cir. 1970) (stating that "[t]he private right of action implied under Rule 10b-5 may be invoked

28   on behalf of a corporation in a shareholder's derivative suit"), an issue yet to be addressed by the

*United States District Court*
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1   Ninth Circuit, he has not alleged the purchase or sale of any shares, either by Oclaro or even himself

2   during the Class Period. *See* Aguilar Compl. ¶ 82 (simply alleging that "Class members acquired

3   Oclaro securities during the Class Period at artificially high prices and were damaged").

4          Because Mr. Aguilar claims subject matter jurisdiction based on federal question jurisdiction

5   alone, and there appear to be insufficient allegations supporting the federal securities claim, then this

6   Court would appear to have no subject matter jurisdiction over his case. In this circumstance, the

7   propriety of consolidation of his case with the other shareholder derivative lawsuits is questionable.

8   J&W argued at the hearing that consolidation would destroy diversity jurisdiction, and L&K/FT did

9   not dispute such. Indeed, L&K/FT effectively conceded that it would, stating that they would

10  substitute a new plaintiff in the place of Mr. Aguilar.

11         In light of L&K/FT's effective concession, the Court shall, at least at this juncture in the

12  proceedings, deny without prejudice Mr. Aguilar's motion to consolidate his case with the other

13  shareholder derivative actions.

14  B.      Competing Motions for Appointment as Lead Counsel

15         Because the Court is not consolidating the *Aguilar* case, FT (Mr. Aguilar's counsel) cannot

16  be considered a candidate for the position of lead counsel. Therefore, the Court shall construe the

17  motion for appointment of L&K/FT as co-lead counsel to be a motion for appointment of L&K as

18  lead counsel alone. Competing against this motion is the motion for appointment of J&W as lead

19  counsel.

20         With respect to appointment of lead counsel, the Ninth Circuit has held that a court has the

21  inherent power to consolidate actions and appoint lead counsel to supervise and coordinate

22  prosecution of a case. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774 (9th Cir. 1977)

23  (agreeing with the Second Circuit that "'[t]he benefits achieved by consolidation and the

24  appointment of general counsel, i.e. elimination of duplication and repetition and in effect the

25  creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will

26  be channeled, will most certainly redound to the benefit of all parties to the litigation"). In this case,

27  as indicated in the hearing herein, the Court is concerned with the accrual of needless and excessive

28  attorney fees in the derivative actions which are likely to follow the class action securities suit.

3

1   Factors that courts typically consider in lead counsel determinations include: (1) the quality of the

2   pleadings, (2) the vigorousness of the prosecution of the lawsuits, (3) the capabilities of counsel,

3   including their experience and prior success record, and whether counsel's charges are reasonable,

4   and (4) whether one complaint is simply a "copycat action" of another. *See Pirelli Armstrong Tire*

5   *Corp. Retiree Med. Benefits Trust*, No. C 11-2369 SI, 2011 U.S. Dist. LEXIS 86421, at *9-10 (N.D.

6   Cal. Aug. 3, 2011); *Resnik v. Woertz*, Nos. 10-527-GMS, 10-603-GMS, 2011 U.S. Dist. LEXIS

7   31868, at *15 (D. Del. Mar. 28, 2011); *Sexton ex rel. Jones Soda Co. v. Van Stolk*, Nos.

8   C07–1782RSL, C08–0018RSL, 2008 WL 1733242, at *1 (W.D. Wash. Apr. 10, 2008).

9        Most of these factors are neutral. For example, the quality of J&W's complaint and L&K's

10   complaint are roughly on par with one another. The Court finds that J&W's complaint is a bit more

11   detailed, but is not markedly superior. For example, J&W has not pointed to any authority

12   establishing that a failure to make a jury request in compliance with Civil Local Rules results in a

13   waiver, particularly when the party includes a demand for a jury on the caption page. J&W points

14   out that its complaint has additional allegations about demand futility that L&K's complaint does

15   not. While this is true, L&K's complaint contains more than sufficient allegations regarding

16   demand futility – indeed, contains the critical allegations regarding demand futility (*i.e.*, the

17   individual officers have no incentive to expose their own misconduct). Finally, although J&W's

18   complaint has allegations about the individual officers' incentive compensation and L&K's

19   complaint does not, it is not clear whether those allegations are material to the lawsuit, at least as

20   pled. For example, J&W does not allege that Oclaro's officers made misleading statements in order

21   to bolster Oclaro's stocks or profits which would affect their incentive compensation.

22        As for the capabilities of counsel, this factor is a close call. Both J&W and L&K have

23   demonstrated that they are qualified and experienced and are capable of acting as lead counsel.

24   Contrary to what J&W asserts, there is evidence indicating that L&K have sufficient experience as

25   lead or co-lead counsel in shareholder derivative actions. Furthermore, L&K's experience in

26   securities actions generally translates sufficiently into a shareholder derivative case such as this

27   where fraud is involved. However, the Court is favorably impressed by J&W's presentation and

28   knowledge.

United States District Court
For the Northern District of California

4

1      As for the assertion that L&K's complaint is merely a "copycat," it too is effectively neutral;

2  it appears that both J&W and L&K tracked the complaint filed in the Oclaro securities class action.

3      To the extent L&K argues that firm resources is another factor that should be taken into

4  account, again, the Court finds this factor largely neutral.  While L&K may be a bigger law firm, the

5  Court does not expect that all of the firm's lawyers would be working on this litigation.  L&K

6  admitted as much at the hearing.  Moreover, having many lawyers working on the matter would run

7  counter to the Court's directive to the plaintiff's attorneys in the shareholder derivative actions that

8  it does not want fees and costs to be run up in the actions (*i.e.*, no fee churning) because the cases

9  are essentially "piggyback" actions to the Oclaro securities class action as noted above.  L&K points

10  out that it can help reduce costs because it has access to an in-house expert.  While L&K's having

11  such access would potentially be useful, that fact ultimately does not weigh much in the calculus

12  given that (1) the shareholder derivative actions will largely be riding on the coattails of the Oclaro

13  securities class action and (2) J&W's experience litigating shareholder derivative actions gives it a

14  certain amount of pre-existing expertise.

15      The remaining factor that weighs slightly in favor of one firm over another is the factor of

16  vigorousness of prosecution.  Here, the evidence of record indicates that J&W has done more than

17  L&K.  J&W's complaint was the first-filed derivative action, and J&W appears to have taken the

18  lead in relating and consolidating the various derivative suits.  The Court acknowledges that these

19  cases are at their inception and thus J&W has not done substantially more than L&K.  Nevertheless,

20  at this point in the proceedings, J&W has done more – even if only marginally more – to move the

21  lawsuits forward.

22      Taking into account the above factors, the Court finds that appointment of J&W as lead

23  counsel is appropriate.  The Court notes that it also has considered the possibility of appointing

24  J&W and L&K as co-lead counsel.  However, this approach is not advisable because it could well

25  drive up fees and costs as a result of duplication and thus defeat the purpose of appointing lead

26  counsel in the first place.  The Court takes this opportunity to reiterate that it expects fees and costs

27  in the shareholder derivative suits to be well maintained within reasonable bounds.  Furthermore, the

28  Court advises J&W that, should a fee motion ultimately be filed, that motion will not be rubber

United States District Court

For the Northern District of California

Exhibit D, Page 36

United States District Court
For the Northern District of California

1  stamped but rather will be rigorously scrutinized, both in terms of the number of hours and the

2  reasonable hourly rates.  Billing judgment in cases such as these, which are tag-alongs to the

3  securities class action, must be employed.  Further, the Court expects that if reasonably required

4  work expands beyond the regular capabilities of J&W, J&W will allocate work to L&K.

5  **III.   <u>CONCLUSION</u>**

6       For the foregoing reasons, Mr. Aguilar's motion to consolidate is denied, J&W's motion for

7  appointment as lead counsel is granted, and L&K's motion for appointment as lead counsel is

8  denied.

9       This order disposes of Docket Nos. 9 and 10.

10

11       IT IS SO ORDERED.

12

13  Dated:  September 14, 2011

14                           EDWARD M. CHEN

15                           United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit D, Page 37

# Exhibit E

1

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4    - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6    - - -

7    JANIS DISLEVY, ET. AL.,              )
                                          )
8              Plaintiffs,               )
                                          )   No. ED CV 08-06788-SGL
9         vs.                            )
                                          )
10   RODNEY C. SACKS, ET. AL.,           )
                                          )
          Defendants.                    )
11   _____)
                                          )
12   MARCELO CUNHA,                      )
               Plaintiff,                )
13        Vs.                            )   No. ED CV 08-01249-SGL
                                          )
14   HANSEN NATURAL CORPORATION, ET AL.  )
                                          )
15             Defendants.               )   MOTION HEARINGS

16

17

18          REPORTER'S TRANSCRIPT OF PROCEEDINGS

19              Riverside, California

20        Monday, June 22, 2009; 10:49 A.M.

21

22

23

24          THERESA A. LANZA, RPR, CSR
         Federal Official Court Reporter
24         3470 12th Street, Rm. 134
            Riverside, California  92501
25              (951) 274-0844

Monday, June 22, 2009                    ED CV 08-06788; ED CV 08-01249

Exhibit E, Page 39

```
 1    APPEARANCES:

 2

 3    On behalf of Plaintiff Raymond Merckel:

 4                      JOHNSON BOTTINI, LLP
                        BY:  Frank J. Johnson
 5                      655 West Broadway
                        Suite 1400
 6                      San Diego, California   92101
                        619-230-0063
 7

 8    On behalf of Plaintiff Janis Dislevy:

 9                      BARROWAY TOPAZ KESSLER
                         MELTZER CHECK LLP
10                      BY:  Eric L. Zagar
                        280 King of Prussia Road
11                      Radnor, Pennsylvania  19087
                        610-822-2209
12
                        ROSMAN & GERMAIN LLP
13                      BY:  Daniel L. Germain
                        16311 Ventura Blvd.,
14                      Suite 1200
                        Encino, California   91436-2152
15                      818-788-0877

16

17    On behalf of Defendant Hansen Beverage:

18                      BIRD MARELLA
                        BY:  Mark T. Drooks
19                      1875 Century Park East,
                        23rd Floor
20                      Los Angeles, California  90067-2561
                        310-201-2100
21

22    On behalf of Plaintiff New Jersey Carpenters:

23                      MILBERG LLP
                        BY:  Jeff Westerman
24                      BY:  Andre Rado
                        300 South Grand Avenue, Suite 3900
25                      Los Angeles, California  90071
                        213-617-1200
      /  /  /
```

```
 1                    I N D E X  (Continued)

 2

 3    APPEARANCES (continued):

 4    On behalf of Plaintiff Structural Ironworkers:

 5                    COUGHLIN STOIA GELLER
                        RUDMAN & ROBBINS LLP
 6                    BY:  Douglas R. Britton
                      BY:  Brian O'Mara
 7                    BY:  Darren J. Robbins
                      655 West Broadway,
 8                    Suite 1900
                      San Diego, California   92101-8498
 9                    619-231-1058

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

20

1   date.  She continues to hold the stock today.

2          THE COURT:  Would you agree with the Court that it

3   does not make much sense, though, to have a different lead

4   plaintiff than lead counsel?

5          MR. ZAGAR:  Yes, Your Honor.  Whoever is lead          11:11

6   plaintiff should go with their personally-chosen counsel, and

7   vice versa.

8          THE COURT:  Very good.

9          Thank you, Counsel.

10         Does the defense wish to say anything, or are you      11:12

11  still on the sidelines on this whole dispute?

12         MR. DROOKS:  Your Honor, I do want to address one

13  issue.

14         Your Honor, we did submit something asking that only

15  a single firm be appointed as lead counsel.  Among derivative  11:12

16  actions, we don't view this as a particularly complex or

17  massive one.  And from the company's perspective, more lawyers

18  mean a larger fee application at the end of day if the case is

19  settled or otherwise resolved in a way that will lead to fees.

20         We are concerned that the Robbins Umeda firm, which    11:12

21  had filed the state court action and dismissed it when we

22  advised them we would be moving for a stay in the state court

23  in favor of proceeding in federal court, has now appeared in

24  the Merckel case.  We do not believe that two law firms need to

25  be co-lead counsel or have any significant role in the case.   11:13

| 1 | One law firm with adequate lawyers can litigate against our |
|---|---|
| 2 | 30-lawyer firm. |
| 3 | Thank you. |
| 4 | THE COURT:  Very well. |
| 5 | The Court will be appointing one lead counsel in this |
| 6 | matter. |
| 7 | The Court really is not in a position to find that |
| 8 | one firm is superior to the other.  You both have tremendous |
| 9 | attributes.  There's some negatives associated with anybody, so |
| 10 | at the end of the day, an unbalanced -- it's not superiority |
| 11 | that the Court relies upon in this particular case.  But |
| 12 | Johnson Bottini did file first, and they have, in the Court's |
| 13 | view, more diligently pursued this particular prosecution. |
| 14 | Therefore, the Court, in granting the motion to |
| 15 | consolidate, will also appoint Johnson Bottini as lead counsel |
| 16 | and Mr. Merckel as lead plaintiff. |
| 17 | MR. JOHNSON:  Thank you, Your Honor. |
| 18 | THE COURT:  Thank you, Counsel. |
| 19 | MR. JOHNSON:  Would Your Honor like us to present a |
| 20 | proposed order, or will the Court do that? |
| 21 | THE COURT:  The Court will issue an order. |
| 22 | MR. DROOKS:  May I address the Court on scheduling? |
| 23 | THE COURT:  Actually, there may be some aspects -- go |
| 24 | ahead and submit a proposed order on that, Counsel, if you |
| 25 | would. |

11:13
11:13
11:14
11:14
11:14

Monday, June 22, 2009

ED CV 08-06788; ED CV 08-01249

Exhibit E, Page 43

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2012, I authorized the electronic filing of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 27, 2012.

s/ KATHLEEN A. HERKENHOFF
KATHLEEN A. HERKENHOFF

THE WEISER LAW FIRM, P.C.
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: 858/794-1441
Facsimile:  858/794-1450

E-mail:kah@weiserlawfirm.com

# Mailing Information for a Case 8:12-cv-01716-DMG-FMO

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Frank J Johnson**
  frankj@johnsonandweaver.com,shawnf@johnsonandweaver.com,shelbyr@johnsonandweaver.com

- **Peter Bradley Morrison**
  peter.morrison@skadden.com,alejandra.lopez@skadden.com,allison.velkes@skadden.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
David Elliot
Johnson and Weaver, LLP
110 West A Street   Suite 750
San Diego, CA 92101
```