1    THE WEISER LAW FIRM, P.C.
     KATHLEEN A. HERKENHOFF (SBN 168562)
2    12707 High Bluff Drive, Suite 200
     San Diego, CA 92130
3    Telephone: 858-794-1441
     Facsimile: 858-794-1450
4    Email: kah@weiserlawfirm.com

5    Attorneys for Plaintiff Bruce Johnson and
     Proposed Co-Lead Counsel
6
     [Additional counsel appear on signature page.]
7

8             UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11   GERALD EASTON, Derivatively On     )    Case No. SACV12-01716-DMG
    Behalf of QUESTCOR                )    (FMOx)
12   PHARMACEUTICALS, INC.,         )
                                  )    MEMORANDUM OF LAW IN
13               Plaintiff,      )    SUPPORT OF MOTION FOR
                                  )    CONSOLIDATION AND
    vs.                            )    APPOINTMENT OF LEAD
14                                     )    COUNSEL
    DON M. BAILEY, MICHAEL H.         )
15   MULROY, STEPHEN L. CARTT,       )
    DAVID YOUNG, VIRGIL D.            )    DATE:      November 30, 2012
16   THOMPSON, MITCHELL J. BLUTT,   )    TIME:      9:30 a.m.
    MD, NEAL C. BRADSHER,           )    CTRM:     7
17   STEPHEN C. FARRELL, LOUIS E.     )    JUDGE:    Hon. Dolly M. Gee
    SILVERMAN and SCOTT M.          )
18   WHITCUP, MD.,                   )    Date Case Filed: 10/4/12
                                    )
19            Defendants,     )
                                    )
20    – and –                        )
                                    )
21   QUESTCOR PHARMACEUTICALS,    )
    INC., a California Corporation,       )
22                                     )
           Nominal Party.    )
23    _____ )

24   Caption continued on following pages.

25

26

27

28



1
2  BRUCE JOHNSON, Derivatively on     Case No. SACV12-01718-DMG
3  Behalf of QUESTCOR                  (FMOx)
   PHARMACEUTICALS, INC.,
                                       Date Case Filed: 10/4/12
4                        Plaintiff,
5      vs.
6  DON M. BAILEY, MICHAEL H.
   MULROY, STEPHEN L. CARTT,
7  DAVID YOUNG, VIRGIL D.
   THOMPSON, MITCHELL J. BLUTT,
8  NEAL C. BRADSHER, STEPHEN C.
   FARRELL, LOUIS E. SILVERMAN
9  and SCOTT M. WHITCUP,

10                       Defendants,
11     – and –
12 QUESTCOR PHARMACEUTICALS,
   INC.,
13
                   Nominal Party.
14

15 NILABRATA GOSWAMI, Individually   Case No. SACV12-01753-DMG
16 and On Behalf of All Others Similarly  (FMOx)
   Situated,
                                      Date Case Filed: 10/11/12
17                       Plaintiff,
18     vs.
19 DON M. BAILEY, MICHAEL H.
   MULROY, STEPHEN L. CARTT,
20 DAVID YOUNG, VIRGIL D.
   THOMPSON, MITCHELL J. BLUTT,
21 and STEPHEN C. FARRELL,
22                       Defendants,
23     – and –
24 QUESTCOR PHARMACEUTICALS,
   INC.,
25
                   Nominal Defendant.
26

27 Caption continued on following page.
28

| | | |
|---|---|---|
| 1 | | |
| 2 | EARL RICHARDS, Individually and On Behalf of All Others Similarly Situated, ) | Case No. SACV12-01754-DMG (FMOx) |
| 3 | ) | Date Case Filed: 10/11/12 |
| 4 | Plaintiff, ) | |
| 5 | vs. ) | |
| 6 | DON M. BAILEY, MICHAEL H. MULROY, STEPHEN L. CARTT, ) | |
| 7 | DAVID YOUNG, VIRGIL D. THOMPSON, MITCHELL J. BLUTT, and STEPHEN C. FARRELL, ) | |
| 8 | Defendants, ) | |
| 9 | – and – ) | |
| 10 | QUESTCOR PHARMACEUTICALS, ) | |
| 11 | INC., ) | |
| 12 | Nominal Defendant. ) | |
| 13 | | |

| | | |
|---|---|---|
| 14 | JAMES TRIPOLI, Derivatively On Behalf of QUESTCOR ) | Case No. SACV12-01759-AG(MLGx) |
| 15 | PHARMACEUTICALS, ) | Date Case Filed: 10/11/12 |
| 16 | Plaintiff, ) | |
| 17 | vs. ) | |
| 18 | DON M. BAILEY, MICHAEL H. MULROY, STEPHEN L. CARTT, ) | |
| 19 | DAVID YOUNG, DAVID J. MEDEIROS, MITCHELL J. BLUTT, ) | |
| 20 | VIRGIL D. THOMPSON, STEPHEN C. FARRELL, NEAL C. BRADSHER, ) | |
| 21 | LOUIS E. SILVERMAN, and SCOTT M. WHITCUP, ) | |
| 22 | Defendants, ) | |
| 23 | – and – ) | |
| 24 | QUESTCOR PHARMACEUTICALS, ) | |
| 25 | INC., a California Corporation, ) | |
| 26 | Nominal Defendant. ) | |
| 27 | | |
| 28 | | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   SUMMARY OF THE FACTS ............................................................... 1

III.  ARGUMENT ....................................................................................... 3

    A.    Consolidation of the Related Questcor Shareholder Actions Is
         Proper ......................................................................................... 3

    B.    Plaintiffs Have Vigorously Prosecuted Their Individual Actions ........ 4

    C.    The Weiser Firm and Johnson & Weaver Are Uniquely
         Qualified to Serve as Lead Counsel ........................................... 6

IV.   CONCLUSION .................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984) ................................................................. 6

*Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.,*
  339 F.2d 673 (3d Cir. 1964) .............................................................. 3

*Horn v. Raines,*
  227 F.R.D. 1 (D.D.C. 2005) ............................................................... 3

*Ikerd v. Lapworth,*
  435 F.2d 197 (7th Cir. 1970) ............................................................. 3

*Landis v. N. Am. Co.,*
  299 U.S. 248 (1936) ......................................................................... 2

*Millman v. Brinkley,*
  No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113
  (N.D. Ga. Oct. 1, 2004) ..................................................................... 3

*In re Oracle Corp. Derivative Litigation,*
  824 A.2d 917 (Del. Ch. 2003) ......................................................... 5, 6

*TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.,*
  No. 18336, 2000 Del. Ch. LEXIS 147 (Del. Ch. Oct. 17, 2000). ..................... 10

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 42(a) ............................................................................... 1, 2, 3

## I.   INTRODUCTION

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Plaintiffs Gerald Easton ("Easton") and Bruce Johnson ("Johnson") (collectively, the "Plaintiffs") seek to consolidate all five pending (and subsequently filed) related shareholder derivative actions (the "Derivative Actions") brought on behalf of nominal party Questcor Pharmaceuticals, Inc. ("Questcor" or the "Company") that concern the materially false and misleading statements defendants issued concerning Questcor's H.P. Acthar Gel (Repository Corticotropin Injection) ("Acthar") product and the financial results related thereto.  Plaintiffs also seek an order appointing their counsel, The Weiser Law Firm, P.C. ("The Weiser Firm") and Johnson & Weaver, LLP ("Johnson & Weaver") as Co-Lead Counsel.

## II.   SUMMARY OF THE FACTS

The Derivative Actions assert claims for, *inter alia*, breach of fiduciary duty and unjust enrichment on behalf of Questcor against the Company's entire Board of Directors and certain of its top officers (the "Defendants").  *See e.g.*, Exhibits A and B to the Declaration of Kathleen A. Herkenhoff in Support of Motion for Consolidation and Appointment of Lead Counsel (the "Herkenhoff Decl.").[1]  The Derivative Actions seek to recover damages and obtain other relief for the Company against Defendants for the misconduct alleged in the Derivative Actions.

Specifically, the Derivative Actions concern misrepresentations concerning the Company's core product, Acthar, which provides approximately 90% of the

---

[1]   As Exhibits A-E of the Herkenhoff Decl. demonstrate, each of the Derivative Actions assert substantially the same facts.  Indeed, based upon the Local Rule 7 pre-filing conferences in the Derivative Actions, it is understood that all parties to the Derivative Actions agree that consolidation is appropriate.  To provide the Court, however, with a brief overview of the alleged facts, Plaintiffs herein will cite to the paragraphs of Exhibits A and B to the Herkenhoff Decl.  Additional support for this Motion is set forth in the Declaration of Frank J. Johnson in Support of Motion for Consolidation and Appointment of Lead Counsel (the "Johnson Decl."), filed concurrently herewith.

1   Company's revenues. Herkenhoff Decl., Ex. A. at ¶1. *See also* Herkenhoff Decl., Ex.

2   B at ¶2. Defendants caused Questcor to market Acthar for conditions for which it had

3   not historically been approved, such as MS and nephrotic syndrome, despite an

4   absence of clinical verification that it was effective for such conditions. *Id.*, Ex. A at

5   ¶¶4, 7. Although the improper marketing of Acthar in this manner inflated the

6   Company's revenues in the short term (*see e.g.*, Herkenhoff Decl., Ex. B at ¶4,

7   describing the artificial inflation to Questcor's stock price based upon the materially

8   false statements concerning Acthar), it has subjected Questcor to scrutiny by federal

9   authorities for potential violations of law. *Id.*, ¶5. *See also id.*, ¶13 (September 24,

10  2012 announcement of federal investigation into the Company's marketing and

11  promotional practices).

12        Indeed, on September 19, 2012, Citron Research ("Citron") reported that Aetna,

13  Inc. ("Aetna") had revised its policy concerning Acthar, which would severely limit

14  coverage of the Company's primary drug. *Id.* at Ex. B. at ¶5. Aetna's clinical

15  research revealed that, of the 19 indications for which the U.S. Food and Drug

16  Administration had approved Acthar, research supported *only one* of the 19

17  indications. *Id.* (emphasis added). On this and similar negative news from Aetna,

18  Questcor's stock price plummeted $24.17 per share to close at $26.35 per share on

19  September 19, 2012, a one-day decline of 48%. *Id.*, ¶6.

20        As a result of the foregoing, Defendants breached their fiduciary duties of

21  loyalty and good faith owed to Questcor and its shareholders. Defendants' actions

22  have irreparably damaged Questcor's corporate image and goodwill. Notably, even

23  after the horrendous 48% stock price drop on September 19, 2012, more bad news

24  faced the Company when the government investigation made news on September 24,

25  2012. Upon this news, the share price of the Company's stock was hammered even

26  further, dropping $11.05 per share to close at $19.08 per share on September 24, 2012,

27  a decline of 37% on high trading volume. *Id.* at Ex. B, at ¶¶59-60.

28

Plaintiffs are pursuing the Derivative Actions to compensate Questcor for the harm caused by the conduct of the individuals responsible for the corporation's conduct – the Company's directors and senior management – and to impose appropriate responsibility upon those individuals. *See* Ex. A & B to the Herkenhoff Decl. Plaintiffs also seek to hold the Defendants liable for the return of the improper insider trading proceeds they secured by trading on the material adverse information that only they knew about Acthar and the Company's financial condition. *See* Ex. A to Herkenhoff Decl., ¶¶23-30, 46-47.

## III.   ARGUMENT

### A.   Consolidation of the Related Questcor Shareholder Actions Is Proper

Presently pending in this District are five related shareholder derivative actions (the "Derivative Actions"):

| Case Name | Case No. | Date Filed |
|---|---|---|
| *Easton v. Bailey, et al.* | SACV12-01716-DMG(FMOx) | 10/4/12 |
| *Johnson v. Bailey, et al.* | SACV12-01718-DMG(FMOx) | 10/4/12 |
| *Goswami v. Bailey, et al.* | SACV12-01753-DMG(FMOx) | 10/11/12 |
| *Richards v. Bailey, et al.* | SACV12-01754-DMG(FMOx) | 10/11/12 |
| *Tripoli v. Bailey, et al.* | SACV12-01759-AG (MLGx) | 10/11/12 |

Each of the Derivative Actions currently pending in this District involves common questions of law and fact. *See* Herkenhoff Decl., Exs. A-E. Significantly, each of the Derivative Actions concerns Defendants' materially false and misleading statements concerning the Acthar product and the Company's financial results. *Id.* Therefore, Plaintiffs respectfully submit that the Derivative Actions should be consolidated for all purposes under Fed. R. Civ. P. 42(a). Indeed, as set forth in the Herkenhoff Decl., during the Rule 7-3 meet and confer process, each of the parties to the Derivative Actions agreed that consolidation is proper. *See* Herkenhoff Decl., ¶¶3-5.

1     The power to consolidate related actions falls within the broad inherent

2  authority of every court "to control the disposition of the causes on its docket with

3  economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am.*

4  *Co.*, 299 U.S. 248, 254 (1936).  Rule 42(a) provides:

5      Consolidation; Separate Trials

6      (a)  Consolidation.  If actions before the court involve a common

7      question of law or fact, the court may: (1) join for hearing or trial any or

8      all matters at issue in the actions; (2) consolidate the actions; or (3) issue

9      any other orders to avoid unnecessary cost or delay.

10  Fed. R. Civ. P. 42(a).

11     A court has discretion to consolidate related cases which involve common

12  questions of fact and law under Rule 42(a) "under the policy that considerations of

13  judicial economy strongly favor simultaneous resolution of all claims growing out of

14  one event." *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970); *see also Ellerman*

15  *Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964).

16     Consolidation of similar shareholder actions, in particular, can help alleviate

17  "needless duplication of time, effort and expense on the part of the parties and the

18  Court . . . ." *Millman v. Brinkley*, No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS

19  20113, at *6 (N.D. Ga. Oct. 1, 2004). "[W]hen consolidation is appropriate, the Court

20  has the discretion to order the consolidation of subsequently-filed or transferred cases

21  that allege similar facts as those alleged in the current shareholder derivative suits."

22  *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related

23  derivative actions).  For the foregoing reasons, the Derivative Actions should be

24  consolidated.

25    **B.**   **Plaintiffs Have Vigorously Prosecuted Their Individual**
           **Actions**

26

27     Courts have consistently held that the decision of which plaintiffs should

28  control a shareholder derivative litigation should be analyzed via objective factors that

1 are most likely to demonstrate which plaintiffs will best serve the interests of the
2 shareholder base as a whole. *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*,
3 No. 18336, 2000 Del. Ch. LEXIS 147, at *10 (Del. Ch. Oct. 17, 2000). Courts have
4 used the following objective criteria to determine who should control a shareholder
5 derivative litigation:

6 • "[The] Court should consider the quality of the pleading[s] . . . ." *Id.*
7 • The . . . Court should accord some weight in the analysis to whether a
8 particular litigant has prosecuted its lawsuit with greater energy,
9 enthusiasm or vigor than have other similarly situated litigants." *Id.* at
10 *10-*11.

11 Application of these factors to this case strongly supports the appointment of the
12 Plaintiffs' choice of Co-Lead Counsel.[2]

13      Plaintiffs filed their actions on behalf of Questcor seeking redress for the harm
14 done to the Company by Defendants' conduct, doing so through their counsel's well-
15 researched complaints. *See* Herkenhoff Decl., Exs. A & B. A reading of Exhibits A
16 & B to the Herkenhoff Decl. make clear that Plaintiffs have filed pleadings of
17 substantial "quality." *See TCW*, 2000 Del. Ch. LEXIS 147, at *10. Further, as
18 detailed in the Herkenhoff Decl. and in the Johnson Decl., Plaintiffs are the first to
19 initiate any of the Derivative Actions on behalf of Questcor, and have demonstrated
20 already their ability to advance the litigation expeditiously and aggressively. *See*
21 Herkenhoff Decl., ¶2; Johnson Decl., ¶¶2-4, 6.

22

23

_____

24 [2]     As currently styled, the Motion seeks the appointment of Co-Lead Counsel, and
not a "lead plaintiff." Plaintiffs do not believe that the formal title of "lead plaintiff"
25 is necessary, but to the extent the Court wishes to designate a "lead plaintiff," the
Plaintiffs stand ready to assume that mantle. Plaintiffs, therefore, briefly address
26 herein factors that courts have used to examine the suitability of the plaintiffs
themselves to serve in the role of "lead plaintiff" and, as demonstrated herein,
27 Plaintiffs amply satisfy all requirements.

28

### C.   The Weiser Firm and Johnson & Weaver Are Uniquely Qualified to Serve as Lead Counsel

Plaintiffs request that The Weiser Firm and Johnson & Weaver be named Co-Lead Counsel in the Derivative Actions following consolidation.  As demonstrated herein, as well as in the Herkenhoff Decl., and Exhibits F-J thereto, and in the Johnson Decl., and Exhibits A-E thereto, each of these firms has a long-standing and unparalleled track record of achieving excellent results in litigation throughout the country on behalf of corporations and their shareholders.

Indeed, The Weiser Firm has been involved in some of the most successful shareholder derivative actions in history.  *See* Herkenhoff Decl., Ex. F (The Weiser Firm Resume).   Robert Weiser, a founding member of The Weiser Firm, has personally been involved in many ground-breaking shareholder derivative actions, including the well-known *In re Oracle Corp. Derivative Litigation*, 824 A.2d 917 (Del. Ch. 2003) (one of the largest derivative settlements ever at the time it was agreed to);[3] *David v. Wolfen, et al.* ("*Broadcom*"), No. 01-CC-03930 (Cal. Super. Ct., Orange County);[4] *Gebhardt v. Allumbaugh, et al.* ("*El Paso*"), No. 2002-13602 (Tex.

---

[3]     In *Oracle*, plaintiffs challenged certain multi-million dollar stock sales made by Oracle's senior officers, including founder Larry Ellison. Oracle's Board of Directors appointed a special litigation committee ("SLC") to investigate plaintiffs' claims, and after a lengthy investigation, the SLC moved to dismiss the case, having concluded that the claims lacked merit.   Among other things, plaintiffs challenged the independence of the SLC members, their good faith, and their ultimate conclusions. The Delaware Chancery Court denied the SLC's motion, allowing the action to proceed to trial.  The *Oracle* decision is one of only four reported Delaware cases where a SLC's motion to dismiss was denied by a Delaware chancellor, and many commentators view the *Oracle* case as a landmark decision for shareholders.  For example, the *Wall Street Journal* called the seminal *Oracle* decision "one of the most far-reaching ever on corporate governance."  The *Oracle* case eventually settled for $100 million, making it one of the largest derivative settlements in history at the time it was entered into.   *Oracle*, and its impact on corporate governance matters nationwide, is the subject of numerous scholarly articles and treatises.

[4]     Like *Oracle*, *Broadcom* produced a groundbreaking settlement. In connection with the eventual settlement of *Broadcom*, plaintiffs were able to compel Broadcom to make sweeping, substantial changes to its corporate governance practices which included a provision which allows Broadcom's shareholders to nominate directors to Broadcom's Board. In particular, the shareholder-nominated director provision was

1   Dist. Ct., Harris County);[5] *Klotz v. Parfet, et al.* ("CMS Energy"), No. 03-06483-CK

2   (Mich. Cir. Ct. Jackson County), and *Barry v. Cotsakos* ("E\*Trade"), No. CIV419084

3   (Cal. Super. Ct., San Mateo County).[6]

4        In addition to the foregoing, since 2006, The Weiser Firm has been at the

5   forefront of the national investigation and prosecution of "stock option backdating

6   cases." *See* Herkenhoff Decl., Ex. F. In connection therewith, The Weiser Firm was

7   appointed lead or co-lead counsel in scores of cases, and has been partially responsible for

8   the recovery of over $100 million in settlements for the subject corporations. *See e.g.,*

9   *In re Home Depot Inc., Derivative Litigation*, 07-CV-0356-RLV (N.D. Ga.); *In re KB*

10  *Home Shareholder Derivative Litigation*, CV-06-05148-FMC(CTx) (C.D. Cal.) ("KB

11

12  thought to be a highly significant and unusual achievement for Broadcom's
13  shareholders. As the *Associated Press* reported in commenting on the settlement:
    "[i]n contrast to the Broadcom settlement] the Securities and Exchange Commission
14  has met fierce resistance to a proposal just to allow shareholder nominations under very
    limited circumstances." Bruce Meyerson, *Shareholder Suits Means More Money For*
15  *Lawyers, But Bring Governance Gains,* Associated Press, July 27, 2004. This type of
    corporate governance relief has only been achieved in a handful of shareholder derivative
16  actions.

17  [5]   This shareholder derivative action centered on the corporation's alleged anti-
    competitive conduct in California during the energy crisis of 2001-2002. In addition to
18  sweeping changes to the Board's structure and the company's corporate governance
    practices, a $16.75 million recovery was achieved for the Company. The *El Paso*
19  settlement is one of the largest derivative settlements in Texas history.

20  [6]   In the *E\*trade* derivative litigation, the plaintiff challenged the payment of
    alleged excessive compensation awarded to E\*trade's then-current CEO. This case
21  was fraught with substantial difficulties from the start – challenging executive
    compensation awarded at a public corporation has proved to be near-impossible since the
22  Delaware Supreme Court's decision in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) –
    due to the historical protections afforded directors under the business judgment rule.
23  Nonetheless, Plaintiff was able to achieve a remarkable settlement which included
    the CEO returning approximately $25 million in value to the Company, along with
24  sweeping changes to the company's corporate governance practices and the structure
    of its Board. These measures, and the resulting change in the public's perception of
25  E\*trade, were profiled in a *Wall Street Journal* article. *See* Suzanne Craig, *How One*
    *Firm Uses Strict Governance To Fix Its Troubles, Wall St. J.,* Aug. 21, 2003 at A1, A6.
26  Since the time of the *E\*trade* settlement, E\*trade has added independent directors to its
    Board, who subsequently forced out the Company's CEO. In response to these changes,
27  the Company's stock increased more than 300% in the 18 months following the
    settlement and the "new E\*trade" became the subject of several positive media reports.

28

- 7 -

1   Home"); *In re Family Dollar, Inc., Shareholder Derivative Litigation*, 06-CV-

2   00510(W) (W.D.N.C.).[7]

3       Johnson & Weaver has also had extensive success litigating shareholder

4   derivative actions on behalf of publicly traded companies and their shareholders. *See*

5   Johnson & Weaver Firm Resume, attached as Exhibit A to the Johnson Decl. In fact,

6   because of its experience representing both shareholders and corporations, Johnson &

7   Weaver stands apart from several other plaintiffs-side securities firms in this arena.

8   Prior to forming his law firm, Mr. Johnson was a partner at Sheppard, Mullin, Richter

9   & Hampton, LLP, a 500-lawyer international firm, where he represented publicly

10  traded companies in defending representative actions. This prior experience carried

11  over into his current practice: Mr. Johnson has been retained not only by shareholders

12  but also by publicly-traded companies to pursue former directors for breaches of

13  fiduciary duty in a number of matters.

14      For example, Johnson & Weaver was retained by the U.S. Chapter 7 Trustee of

15  Artes Medical, Inc., in an action for breach of fiduciary duty against Artes' former

16  officers and directors, in San Diego Superior Court titled *Gladstone v Reinhard, et al.*,

17

18  [7]    Recently, The Weiser Firm obtained $6.5 million on behalf of TeleTech

19  Holdings, Inc., as well as a comprehensive set of corporate governance reforms, in a
    shareholder derivative action brought in the Delaware Chancery Court entitled,
    *Gregory v. Tuchman, et al.*, C.A. No. 3925-CC (Del. Ch.) ("*TeleTech*"). *See*

20  Herkenhoff Decl., Ex. G (Stipulation of Settlement) at Section V(2)(A). During the
    hearing in which the settlement was finally approved, Chancellor Chandler cited the

21  *TeleTech* case as involving a "very generous" settlement which was "highly
    beneficial" to TeleTech and its stockholders. *See* Herkenhoff Decl., Ex. H (excerpts

22  from Transcript of January 5, 2010 Settlement Hearing) at 26-27; Ex. I (Final
    Judgment Approving Settlement and Order of Dismissal). Chancellor Chandler also

23  specifically complimented plaintiff's counsel for their efforts. *Id.* Currently, The
    Weiser Firm is serving as co-lead or sole lead counsel in several stockholder

24  derivative actions that could have a significant impact on corporate governance
    issues nationwide. One such case is *In re KeyCorp Deriv. Litig.*, Lead Case No. 1:10-cv-

25  01786-DAP (N.D. Ohio 2010), where The Weiser Firm has served as lead counsel in a
    derivative action based on allegations of misconduct arising from the failure of the

26  KeyCorp Board of Directors to amend the executive compensation awarded for 2009,
    even though a majority of KeyCorp's voting stockholders rejected such compensation in

27  a "say on pay" vote. *See* Herkenhoff Decl., Ex. J (Stipulation Consolidating
    Actions, Appointing Lead Counsel and Related Matters and Order Thereon).

28

1   Case No. 37-2008-00091039-CU-NP-CTL (Cal. Super. Ct. – San Diego Cnty. Sept. 4,
2   2008).  After years of hard fought litigation on behalf of the estate in bankruptcy,
3   Johnson & Weaver negotiated a multi-million dollar settlement, which the bankruptcy
4   court approved on September 1, 2011.  In finding that "[t]here's no question in my
5   mind that this settlement is in the best interest of this estate," the Honorable Laura S.
6   Taylor stated that, "I want to compliment Mr. Johnson, and I want to compliment on
7   the successful recovery for the estate.  The creditors thank you, and I thank you." *In*
8   *the matter of: Artes Medical, Inc*, Reporter's Transcript of Proceedings, Motion for
9   Order Approving Settlement Pursuant to Federal Rules of Bankruptcy Procedure 9019
10  filed on Behalf of Leslie T. Gladstone, p. 3:16-18, 23-25 (Bankr. S.D. Cal. Sept. 1,
11  2011), attached as Exhibit B to the Johnson Decl.

12          Similarly, Johnson & Weaver's predecessor firm ("Johnson Bottini") served as
13  Co-Lead Counsel in *In re Brocade Commc'ns Sys, Inc. Derivative Litig*, No. 1:05-CV-
14  041683 (Cal. Super. Ct. – Santa Clara Cnty.), one of the highest profile cases in the
15  country involving the backdating of stock options by the company's CEO and V.P. of
16  Human Resources, both of whom were convicted of criminal securities violations by
17  grand juries in related criminal actions pending in the Northern District of California.

18          Johnson Bottini successfully objected to the inadequate proposed settlement in a
19  parallel civil proceeding in Federal court.  After almost three years of diligently
20  prosecuting the case – including extensive motion practice, the review of
21  approximately three million pages of documents, and the marshaling of evidence from
22  related cases involving the conduct at Brocade – Johnson Bottini was retained to serve
23  as co-counsel to Brocade's Special Litigation Committee ("SLC").  After
24  presentations by Johnson Bottini, the SLC authorized the continued prosecution of
25  claims against ten of Brocade's officers and directors on behalf of the shareholders.
26  In the end, the court approved the resolution that Johnson Bottini negotiated with the
27  SLC as well as the eventual resolutions with Brocade's executives, which resulted in a
28  recovery of nearly $23 million for the company.

1    Further, International Real Estate (a public company with shares listed on the
2  London Stock Exchange) retained Johnson & Weaver to pursue claims for breach of
3  fiduciary duty against former directors of a joint venture company. *Int'l Real Estate*
4  *PLC v. Oaktree Capital Mgmt, LLC, et al.*, Case No. BC 324973 (Cal. Super Ct. –
5  L.A. Cnty. Aug. 25, 2005). That case involved alleged damages of approximately $20
6  million and ultimately settled on confidential, but favorable, terms for Johnson &
7  Weaver's client. Greenland Corporation, a publicly-traded company located in San
8  Diego, also retained Johnson & Weaver to pursue claims for breach of fiduciary duty
9  against several former officers and directors. *Greenland Corp v. Bonar, et al*, Case
10 No. GIC 842605 (Cal. Super. Ct. – San Diego Cnty. Feb. 10, 2005). That case also
11 settled on confidential terms, but with a significant payment to Johnson & Weaver's
12 client.

13    Based on this track record and the firm's vigorousness in pursuing claims,
14 several courts including courts in this district, have recognized that Johnson & Weaver
15 has the experience to handle complex litigation matters. In *Green Meadows Partners,*
16 *LLP v. Tompkinson*, No. SACV 06-91 (C.D. Cal.), the Honorable Cormac Carney
17 appointed Johnson & Weaver's predecessor firm as lead counsel over competing lead
18 counsel motions, in a case where seven derivative complaints had been filed, noting
19 that the firm is "exceptionally qualified and experienced." The district court
20 subsequently approved a settlement agreement that required implementation of several
21 corporate governance changes. Similarly, in *Dislevy v. Sacks*, No. ED CV 08-06788
22 (C.D. Cal.), the Honorable Stephen G. Larson was faced with competing motions for
23 lead counsel over two shareholder cases. Judge Larson concluded that Johnson &
24 Weaver's predecessor firm has "tremendous attributes" and appointed the firm as lead
25 counsel because "they have, in the Court's view, more diligently pursued this
26 particular prosecution." *See* Johnson Decl., Ex. E at 21.

27    Other courts in California reached similar conclusions. In *In re OmniVision*
28 *Technologies Derivative Shareholder Litigation*, 1-12-cv-216875 (Cal. Super. Ct. –

1  Santa Clara Cnty., filed January 17, 2012), the Hon. James P. Kleinberg appointed
2  Johnson & Weaver Lead Counsel in part because "the presentations by [Johnson &
3  Weaver] are comprehensive and convincing." *See* Johnson Decl., at Ex. C at 3.
4  Similarly, on September 14, 2011, the Honorable Edward M. Chen appointed Johnson
5  & Weaver lead counsel in *In re Oclaro, Inc Derivative Litig*, Lead Case No. C-11-
6  3176 EMC (N.D. Cal.) over several competing motions, noting that "the Court is
7  favorably impressed with [Johnson & Weaver's] presentation and knowledge." *Id.* at
8  Ex. D.

9       The experience and prior success of both The Weiser Firm and Johnson &
10 Weaver unquestionably demonstrate the competence of each firm to lead this
11 litigation.  In addition, The Weiser Firm and Johnson & Weaver possess both the
12 financial resources and substantive expertise necessary to litigate the Derivative
13 Actions vigorously.

14 **IV.   CONCLUSION**

15      For all of the above reasons, Plaintiffs respectfully request that their Motion be
16 granted.  The Derivative Actions should be consolidated and The Weiser Firm and
17 Johnson & Weaver should be appointed Co-Lead Counsel.

18 DATED:  October 26, 2012              THE WEISER LAW FIRM, P.C.
                                          KATHLEEN A. HERKENHOFF (SBN
19                                        168562)

20

21                                        /s/ Kathleen A. Herkenhoff
                                          KATHLEEN A. HERKENHOFF
22

23                                        12707 High Bluff Drive, Suite 200
                                          San Diego, CA 92130
                                          Telephone: 858-794-1441
24                                        Facsimile: 858-794-1450
                                          Email: kah@weiserlawfirm.com
25

26

27

28

- 11 -

1

2                   THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER

3                   BRETT D. STECKER
JEFFREY CIARLANTO

4                   22 Cassatt Avenue, First Floor
Berwyn, PA 19312

5                   Telephone: 610-225-2677
Facsimile: 610-408-8062

6                   Attorneys for Plaintiff Bruce Johnson and
Proposed Co-Lead Counsel

7

8                   RYAN & MANISKAS, LLP
KATHERINE M. RYAN

9                   RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311

10                 Wayne, PA 19087
Telephone: 484/588-5516

11                 Facsimile: 484/450-2582

12                 Attorneys for Plaintiff Bruce Johnson

13                 JOHNSON & WEAVER, LLP
FRANK J. JOHNSON (SBN 174882)

14                 DAVID ELLIOTT (SBN 270381)
110 West A Street, Suite 750

15                 San Diego, CA 92101
Telephone: 619/230-0063

16                 Facsimile: 619/255-1856

17                 Attorneys for Plaintiff Gerald Easton and
Proposed Co-Lead Counsel

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2012, I authorized the electronic filing of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 27, 2012.

s/ KATHLEEN A. HERKENHOFF
KATHLEEN A. HERKENHOFF

THE WEISER LAW FIRM, P.C.
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: 858/794-1441
Facsimile:  858/794-1450

E-mail:kah@weiserlawfirm.com

# Mailing Information for a Case 8:12-cv-01716-DMG-FMO

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Frank J Johnson**
  frankj@johnsonandweaver.com,shawnf@johnsonandweaver.com,shelbyr@johnsonandweaver.com

- **Peter Bradley Morrison**
  peter.morrison@skadden.com,alejandra.lopez@skadden.com,allison.velkes@skadden.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
David Elliot
Johnson and Weaver, LLP
110 West A Street   Suite 750
San Diego, CA 92101
```